# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00420-CV

**David Penny, Appellant**

**v.**

**El Patio, LLC d/b/a El Patio Motel, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-09-0977-C, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## O P I N I O N

David Penny appeals from a district-court judgment in favor of El Patio, LLC on claims involving the alleged mismanagement of the El Patio Motel in San Angelo, Texas. In three issues, Penny challenges the district court's (1) denial of Penny's motion to show authority, (2) imposition of discovery sanctions striking Penny's pleadings, and (3) award of joint and several exemplary damages. For the reasons set forth below, we will reverse and remand the district court's award of exemplary damages, but affirm the remainder of the judgment.

## Background

The underlying legal dispute began as a response to the non-judicial foreclosure of the El Patio Motel under a deed of trust securing a $460,000 loan borrowed by the motel's parent, appellant El Patio, LLC. Specifically, LLC members Penny and Richard Cheroske filed suit against the trustee of the sale, Richard Rauber (another LLC member), to invalidate the deed of trust and

set aside the foreclosure. But as occasionally happens, the scope of the underlying suit expanded to include additional parties and claims that, although related in that they involved the alleged mismanagement of the motel in the months before the foreclosure, soon overtook the foreclosure itself. In fact, the foreclosure-related claims were resolved during the course of litigation, while the claims involving the pre-foreclosure management of the motel survived and are the subject of this appeal.

At the outset, we will review the formation of the LLC and its purchase of the motel. In 2003, several business investors—including, relevant here, Penny, Cheroske, Stephen Hyde, and Rauber—formed the El Patio, LLC to purchase and own the El Patio Motel, a 100 room extended-stay residence located in San Angelo, Texas. Hyde was named as the LLC's operating manager, and the LLC, in turn, hired Blue Castle Property Management, LLC to operate and manage the motel's day-to-day business, such as collecting rents, maintaining bank accounts and records, and paying property and other expenses. Blue Castle was owned by 190 Orange Avenue, which itself was separately owned by LLC members Penny and Cheroske. In 2004, LLC member Rauber loaned the LLC $460,000 under a promissory note secured by a deed of trust in the motel, the same deed of trust under which the motel was later foreclosed. In hopes of a picture saving a thousand words (or at least making them easier to understand), the following is a general depiction of the relationship web described above.



In July 2009, after Blue Castle (in its management capacity) failed to make consecutive loan payments on the $460,000 loan, Rauber foreclosed on the note and sold the motel at a trustee's sale. One month later, Penny and Cheroske filed the underlying suit—as a derivative proceeding in their capacity as members of El Patio, LLC, *see* Tex. Bus. Orgs. Code §§ 101.451–.463 (describing circumstances under which member owners of limited liability corporation may maintain "civil suit in the right of a domestic limited liability company," i.e., a "derivative proceeding")—to challenge the foreclosure on the ground that the deed of trust securing the loan was invalid. And soon thereafter, the LLC intervened in the foreclosure suit to assert several third-party claims against Penny, Cheroske, Blue Castle, Blue Castle's accountant, and 190 Orange Avenue for conversion, theft liability, breach of fiduciary duty, breach of contract, fraud, negligent misrepresentation, unjust enrichment, money had and received, and related declaratory and injunctive relief regarding the management and occupation of the motel.

Penny, Cheroske, and the other third-party defendants, believing that the LLC's attorney did not have the requisite authority under the entity's governing documents to intervene on behalf of the LLC, filed a Rule 12 motion with the district court that required the LLC's attorney to demonstrate to the court that he had the authority to prosecute the suit on the LLC's behalf. *See* Tex. R. Civ. P. 12 ("A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act."). After two hearings on the issue—the second in response to a motion by the third-party defendants to set aside the district court's first denial of their motion—the district court found that the LLC's attorney had the authority to prosecute the suit and denied the third-party defendants' motion, allowing the LLC's third-party claims to continue.

Eventually, after Rauber had resolved his claims with the third-party defendants and agreed with the LLC to set aside the foreclosure, the only remaining claims were El Patio, LLC's claims against the third-party defendants. During the course of the litigation of these remaining claims, the third-party defendants refused to respond to the LLC's discovery requests and discovery-related motions until—after issuing an injunction, granting several motions to compel, awarding significant monetary sanctions, and repeatedly warning the third-party defendants about the consequences of their continued failure to respond—the district court struck the third-party defendants' pleadings and awarded judgment to El Patio, LLC on all its claims. Ultimately, following a trial on the damages issues only, the district court entered final judgment awarding El Patio, LLC the declaratory and injunctive relief it had requested, as well as $302,591.47 in actual damages, $419,506.86 in exemplary damages, pre- and post-judgment interest, and costs of court.

4

Relevant to an issue raised on appeal, the judgment made the third-party defendants jointly and severally liable for the economic and exemplary damages, pre-judgment interest, and the costs of court. It is from this final judgment that Penny appeals here.[1]

### Rule 12 motion to show authority

In his first issue, Penny challenges the district court's denial of the third-party defendants' Rule 12 motion challenging the authority of David Mirazo (El Patio, LLC's attorney) to prosecute the LLC's suit. *See* Tex. R. Civ. P. 12. Specifically, Penny asserts that the district court's denial was in error because Mirazo failed to introduce evidence establishing his authority and, in the alternative, that Mirazo did not have the LLC's authorization to litigate. Because an attorney's authority to file or maintain a suit is a question of law, we review a district court's decision on such a matter de novo. *See State v. Evangelical Lutheran Good Samaritan Soc'y*, 981 S.W.2d 509, 511 (Tex. App.—Austin 1998, no pet.) (citing *Gulf Reg'l Educ. Television Affiliates v. University of Houston*, 746 S.W.2d 803, 806 (Tex. App.—Houston [14th Dist.] 1988, writ denied)); *see also Metz v. Lake LBJ Mun. Util. Dist.*, No. 03–01–000312–CV, 2002 WL 31476887, at *4 (Tex. App.—Austin Nov. 7, 2002, no pet.) (mem. op., not designated for publication).[2]

---

[1] According to El Patio, LLC, various bankruptcy filings in California have left Penny as the only party remaining in this matter.

[2] The parties here insist that our standard of review on this motion is an abuse of discretion as set forth in the supreme court's opinion in *Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 432 (Tex. 1986) (orig. proceeding), and in two opinions from our sister courts that likewise rely on *Urbish*, *In re Guardianship of Benavides*, 403 S.W.3d 370, 373 (Tex. App.—San Antonio 2013, pet. denied) ("Appellate courts review a trial court's ruling on a motion to show authority for an abuse of discretion.") and *R.H. v. Smith*, 339 S.W.3d 756, 762 (Tex. App.—Dallas 2011, no pet.). But a close reading of *Urbish* shows that it, at most, supports the application of an abuse-of-

Penny and Cheroske's Rule 12 motion asserted that Mirazo lacked authority because he lacked the authorization from a majority of the members that is required by the LLC's governing documents. The LLC, offering an affidavit from Hyde and a copy of its operating agreement, responded that Hyde, as operating manager, had the authority under the operating agreement to hire an attorney to prosecute a suit on behalf of the LLC and, further, that more than 70% of the ownership interest in the LLC had approved the LLC's petition in intervention. *See* Tex. R. Civ. P. 12 ("At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party."). After an initial hearing on the issue, the district court found that Mirazo had authority to prosecute and denied Penny and Cheroske's motion. The district court later reaffirmed that finding and denied a second motion on the issue after a hearing prompted by Penny and Cheroske's allegations that they had been denied the opportunity to present evidence and that Mirazo had presented no evidence that he was authorized to prosecute El Patio, LLC's suit.

---

discretion standard only where the court is otherwise obligated to consider the best-interests of the party whose attorney is being challenged and the remedy sought is to replace the attorney, not strike the pleadings as required under Rule 12. In *Urbish*, a father sought to replace his ex-wife as next friend in their minor son's personal-injury suit on the ground that she lacked authority under a divorce decree, but the supreme court, emphasizing that "[w]hen minors sue, trial courts have the responsibility to protect the minor's best interest," held that the trial court's decision to deny motion was not an abuse of its discretion because mother had authority when the suit was initiated, the suit had been prosecuted two years, and because the father had not shown that the mother's interests were adverse to the minor's. *See Urbish*, 708 S.W.2d at 431–32. Similarly, *Benavides* involved the capacity to hire an attorney in a guardianship proceeding, *see* 403 S.W.3d at 376–77, and *R.H.* addressed whether a minor's next friend should be removed as his attorney and replaced with the movant, *see* 339 S.W.3d at 762–63. Here, we have no best-interest consideration, only a question of law under Rule 12. Thus, we follow this Court's holding in *Evangelical*, 981 S.W.2d at 511. *Cf. Abbott v. G.G.E.*, No. 03–11–00338–CV, 2015 WL 1968262, at *5 (Tex. App.—Austin Apr. 30, 2015, no pet. h.) (using abuse-of-discretion standard because best interests at issue).

On appeal, Penny argues initially that the district court erred in denying his motion to show authority because Mirazo, El Patio, LLC's attorney, had "introduced no evidence or testimony at the hearing in support of his authority." A cursory examination of the record shows that this assertion lacks merit. El Patio, LLC's response (and its response to the motion to set aside the district court's first denial of its Rule-12 motion) included an affidavit from Stephen Hyde in which he averred that he had the authority to retain an attorney to prosecute El Patio, LLC's claims because he is the operating manager and the LLC's operating agreement gives the operating manager "all powers and rights necessary, proper, convenient, or advisable to effectuate and carry out the purposes, business and objectives of the Company, and to maximize Company profits." The LLC also provided the district court with copies of its operating agreement, bank records, membership assignments, and three written consents to litigation signed by certain member owners. And at the second hearing on the attorney-authorization issue, the district court was presented with essentially the same evidence, plus additional testimony from several live witnesses, including Hyde and Mirazo. *See Boudreau v. Federal Trust Bank*, 115 S.W.3d 740, 742 (Tex. App.—Dallas 2003, pet. denied) (holding that attorney satisfied Rule-12 burden with affidavit from bank's vice president); *Spigener v. Wallis*, 80 S.W.3d 174, 184 (Tex. App.—Waco 2002, no pet.) (attorney satisfied Rule-12 burden with testimony and affidavit from clients).

With regard to the merits of the authorization issue, Penny argues that the district court should have granted the motion because Hyde's position as operating manager of El Patio, LLC did not vest him with the authority to hire Mirazo to prosecute El Patio, LLC's petition. Specifically, Penny contends that because the LLC's operating agreement does not contain express language authorizing litigation and because Hyde lacked specific approval from a majority

7

interest of the members to conduct the litigation, Hyde lacked the authority under Texas law. In support of these assertions, Penny cites to what he describes as "a long line of Texas cases which hold that in the absence of either board of director approval or express authorization in the bylaws or by special board resolution, the officers of a corporation do not have authority to employ counsel or initiate litigation." *See Square 67 Dev. Corp. v. Red Oak State Bank*, 559 S.W.2d 136 (Tex. Civ. App. Waco—1977, writ ref'd n.r.e.); *Terrace Heights Owners Ass'n v. Corn*, No. 05–92–02073–CV, 1993 WL 268912 (Tex. App.—Dallas, 1993, writ denied). We disagree.

First, Penny's interpretation of the LLC's operating agreement—that it does not give Hyde, as the operating manager, the authority to litigate on behalf of the LLC—conflicts with the plain language of that document.[3] The operating agreement's provision regarding management of the LLC, although it never references litigation, gives the operating manager sole and exclusive control over the company's business and grants to the operating manager all the powers and rights needed to conduct that business:

> The Company shall be managed by the Operating Managers, who shall be paid a fee for serving as Operating Managers, and the conduct of the Company's business shall be controlled and conducted

---

[3] Under the well-known principles of contract construction, the primary objective in construing a written agreement is to determine the intent of the parties as expressed in the instrument. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). In construing the agreement's language, we must apply the ordinary and generally accepted meanings of the words used unless the contract indicates that the language used is intended to impart a technical or different meaning. *See American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). In addition, we must give effect to all provisions so that none are rendered meaningless. *Id*. at 157. If the terms used in the contract can be given a definite or certain legal meaning, the contract is unambiguous and will be enforced as written. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

solely and exclusively by the Operating Managers in accordance with this Agreement. In addition to and not in limitation to any rights and power conferred by law or other provisions of this Agreement, the Operating Managers shall have and may exercise on behalf of the Company *all powers and rights necessary, proper, convenient or advisable to effectuate and carry out the purposes, business and objectives of the Company, and to maximize Company profits.*[4]

(Emphasis added.) Further, the agreement undisputedly names Hyde as the LLC's operating manager: "Management of the Company shall be vested in the Members who shall serve as Operating Managers of the Company, initially Stephen Hyde." The plain intent of this provision is to grant Hyde, as operating manager, full and sole control over the company's business and to give him, as operating manager, all powers and rights necessary to conduct that business. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2002). It is hard to imagine a broader grant of managerial power, but preventing or recovering from losses, whether by theft, misappropriation, bad management, or otherwise, certainly falls under the umbrella of "the purposes, business and objectives" of any company. Moreover, maintaining, reasserting, or regaining control of the company's real property and other assets—the purpose of the LLC's claims here—would likewise fall under the same umbrella. By extension, actions taken to do those things, including filing suit against the persons and entities believed to have misappropriated funds from the motel's bank accounts, mismanaged the motel, and who will not relinquish control of the motel property are necessary, proper, and advisable for the motel's business, objectives, and profits. As

---

[4] The referenced limitation on this authority involved the sale or refinance of real property.

9

such, Hyde, as the named operating manager, had the authority under the plain terms of El Patio, LLC's operating agreement to litigate the claims at issue here on behalf of the LLC, and we hold accordingly.

Even if the LLC's operating agreement did not expressly grant Hyde the authority to conduct litigation on the LLC's behalf, however, the cases that Penny cites in support of his proposition—i.e., that Texas law requires express language in the bylaws or approval from the board of directors for an officer to litigate on behalf of a corporation—would not inform our decision here because (1) they involved corporations, not LLCs and, relatedly, (2) were decided under the now-expired and recodified article 2.31 of the Texas Business Corporation Act. *See* Texas Business Corporations Act, 54th Leg., R.S., ch. 64, art. 2.31, 1955 Tex. Gen. Laws 239, 256–57, *repealed and recodified by* Act of May 13, 2003, 78th Leg., R.S., ch. 183, § 2, 2003 Tex. Gen. Laws 267, 595 (providing that "the business and affairs of a *corporation* shall be managed by a *board of directors*" (emphases added)). The "current" version of article 2.31 is located in the Texas Business Organizations Code (TBOC) chapter specific to for-profit corporations, which in turn is located in "Title 2 Corporations," meaning that it is not applicable to limited-liability corporations such as El Patio, LLC. *See* Tex. Bus. Orgs. Code §§ 1.002(14) (defining "corporation"), 21.401(a) (corporations are managed by board of directors); *see also id.* §§ 101.001–622 (provisions specific to LLCs). More important, however, is that the TBOC provisions applicable here—including those applicable to all business organizations and those specifically applicable to limited-liability companies—provide that, unless the entity's governing documents provide otherwise, a limited liability company's affairs are managed and directed by managers. *See id.* §§ 1.002(35)(A)(iii)–(iv) (defining "governing authority"), 1.002(46) (defining "limited liability company"), 3.101 (governing

10

authority generally), 101.251 (LLC governing authority). Thus, if an LLC's operating agreement does not grant its operating manager the powers and rights discussed above, its manager would manage the company under the gap-filling provisions of the TBOC, not as described in the cases cited by Penny. *See id.* §§ 101.052(b), .252 (providing that LLC company agreement governs, but to extent agreement does not otherwise provide, TBOC governs); *see also id.* §§ 1.002(35)(A), 101.251, .252 (unless governing documents provide otherwise, managers of LLC manage and direct affairs).

Penny next argues that, regardless of the authority granted by the LLC's operating agreement, the second sentence in the following paragraph of the operating agreement requires that *every action* by the LLC must be voted on and approved by a majority interest of the member owners including, he asserts, the hiring of an attorney:

> Management of the Company shall be vested in the Members who shall serve as Operating Managers of the Company, initially Stephen Hyde, or a company controlled by him. Except as otherwise provided in this Agreement, *all decisions of the Operating Managers shall be by a majority in interest of the Members*. All Operating Managers must be Members of the Company, or a company controlled by a member. . . .

(Emphasis added.) We disagree.

Considering the agreement as a whole and harmonizing its provisions with an eye to the particular business activity sought to be served, we conclude that the language Penny relies on here merely explains the method by which, in a situation where there is more than one operating manager and they are not in complete agreement, the managers reach a decision. The paragraph's first sentence provides that management of the company will be vested in operating managers,

11

that only members can serve as operating managers, and that Hyde will be the first member to serve as operating manager. The second sentence, staying within the context of their management of the LLC, explains that the *operating managers'* decisions—i.e., "decisions of the Operating Managers"—are achieved based on their membership interest. Penny's interpretation—i.e., to require a majority vote on *every* company decision—would render the operating agreement unreasonable, inequitable, and oppressive, *see Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) ("Courts will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive."), because it would have the effect of making the agreement's creation of operating managers and their duties meaningless given that a member vote would be required for any and every action. Stated another way, why have operating managers if all decisions must be made by the members? Penny's interpretation would likewise render redundant the agreement's requirement that a majority in interest of the members approve the selling or refinancing of real property.

Based on our determination that the operating agreement vests Hyde with authority to litigate on the LLC's behalf, we hold that Mirazo satisfied his burden by offering El Patio, LLC's operating agreement and Hyde's affidavit. We overrule Penny's first issue.

**Discovery sanctions**

In his second issue, Penny challenges the district court's decision to strike the third-party defendants' pleadings and render judgment for El Patio, LLC as a form of discovery sanctions. We review a trial court's imposition of sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). We will reverse this ruling only if the district court acted

12

"without reference to any guiding rules and principles," such that its ruling was arbitrary or unreasonable. *Id.* at 839. In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Imposition of sanctions is appropriate (1) if there is a direct relationship between the improper conduct and the sanctions imposed—i.e., the sanctions must be directed against the abuse and abuser and be tailored to remedy any prejudice the abuse caused—and (2) if the sanctions are not excessive—i.e., the punishment should fit the crime. *Id.* The imposition of severe sanctions—such as the death-penalty sanctions assessed here—is also limited by constitutional due-process concerns because it adjudicates the merits of a party's claims or defenses. As such, severe sanctions are not appropriate unless the offensive conduct justifies a presumption that the party's claims or defenses lack merit. *Id.*

To determine whether the district court's sanctions were an abuse of discretion under the above guidelines, we begin by reviewing the discovery events leading up to the district court's decision. Early in the litigation, El Patio, LLC filed multiple forms of written discovery directed at each of the third-party defendants, including interrogatories, requests for disclosure, requests for admission, depositions on written questions, and requests for production. Given that many of its claims involved allegations of mismanagement of the motel and misappropriation of funds from the motel's bank accounts, El Patio, LLC focused certain of its discovery requests on obtaining information and records regarding the motel's bank accounts. The following is a chronological accounting of the discovery motions and orders related to the LLC's efforts to get the third-party defendants to respond to these discovery requests.

| December 31, 2009 | Temporary injunction issues—includes order that third-party defendants turn over bank information and records. |
| --- | --- |
| February 23, 2010 | El Patio, LLC files motions to compel, for contempt, and for sanctions. Penny does not file a response. |
| March 3, 2010 | Hearing on motion for sanctions—district court warns third-party defendants that failure to respond to discovery requests "could result in striking pleadings," and sets a March 18 deadline for the responses. |
| March 8, 2010 | El Patio, LLC files motion for sanctions. |
| March 25, 2010 | District court issues order compelling discovery responses. |
| April 14, 2010 | District court imposes discovery sanctions of $810 and orders third-party defendants to appear and show cause why they should not be held in contempt. |
| April 23, 2010 | El Patio, LLC files motion to compel and for sanctions. Penny does not file a response. |
| May 5, 2010 | District court imposes discovery sanctions of $11,185.57. |
| June 28, 2010 | Hearing on El Patio, LLC's motions to compel and for sanctions—district court orders third-party defendants to appear at July 14 show-cause hearing and explain "why the Court should not at this point strike all of the plaintiff's pleadings, as well as Blue Castle's pleadings, for failure to complete discovery. That is somewhat of a—that's kind of a final solution, to strike pleadings, but the Court has entered many discovery orders prior to this, and so it's gotten to the point where the—the final solution may be the only solution." |
| July 21, 2010 | Penny and Cheroske file motion to show authority. |
| August 16, 2010 | El Patio, LLC files motions for contempt, to compel, and for sanctions. Penny files no response. |
| October 22, 2010 | El Patio, LLC files motions to compel and for sanctions. Penny files no response. |

| October 26, 2010 | El Patio, LLC files motion to strike third-party defendants' pleadings and motion for sanctions. Penny files no response. |
| --- | --- |
| November 1, 2010 | District court issues order compelling discovery responses by certain deadline, admissions deemed, and to show cause regarding contempt. |
| January 7, 2011 | Hearing on various motions for contempt, to compel, and for sanctions, including motion to strike pleadings. El Patio, LLC presents extensive evidence. Penny offers none. |
| February 26, 2011 | District court issues orders for pending discovery motions, granting motions for contempt and to compel, and awarding sanctions of $16,370, $450, $450, and $900; and grants El Patio's motion to strike pleadings. |

In addition to the above, the record suggests that the third-party defendants delayed court-ordered mediation by not responding to discovery or producing the requested documents. Further, at one point, the third-party defendants told El Patio, LLC that the bank records would be at their accountant's office, but the documents were not there when El Patio, LLC went there to obtain them. But, with the exception of a printout of a computer program that the LLC already had and one set of unsigned responses to admissions, the third-party defendants systematically avoided responding to the LLC's discovery requests and, in fact, never produced the requested records.

In its order granting the motion to strike pleadings, the district court found that defendants "have abused the discovery process, have failed to comply with El Patio's discovery requests, and have disregarded th[e] Court's orders regarding discovery." The district court also concluded that lesser-assessed "sanctions have failed," and then awarded additional monetary sanctions and entered judgment in favor of El Patio, LLC on all its claims.

On appeal, Penny does not dispute the events as set forth above or that he and the other third-party defendants failed to produce the bank account documents as ordered. Instead, he argues that the trial court abused its discretion in striking the pleadings because Penny "had a legitimate reason to delay responding to discovery until the court had ruled on the authority of Mirazo to file the [petition in] intervention" and because "the discovery sought was basically in the possession of Stephen Hyde." We disagree.

Penny and the third-party defendants did not file the motion to show authority until July 21, 2010. By that time, the discovery deadlines had already passed and the district court had imposed sanctions totaling $11,995.57 against the third-party defendants for their failure to produce the documents. In fact, the third-party defendants did not raise the lack-of-authority issue as a "defense" to these discovery requests until well after they had filed the motion to show authority. Further, when questioned at the various hearings by the district court about the failure to respond to discovery, Penny's attorney responded by saying either that he thought the documents had already been produced or that he expected that they soon would be, but not that his clients were refusing to comply based on their assertion that Mirazo lacked the authority to seek discovery.

Even if we were to accept that the third-party defendants thought they could ignore the discovery requests because Mirazo lacked the authority to prosecute the case, however, Penny does not explain what excused them from observing the injunction and orders of the district court, whose authority here is undeniable. Finally, Penny cites to no authority, and we have found none, supporting his argument that a pending Rule 12 motion excuses a party from obeying discovery requests, much less injunctions and other court orders. Nor does the record show that the district court suspended discovery, abated discovery, or did anything else that would provide an

16

excuse, while the motion to show authority was pending. To the contrary, the record shows that the district court specifically denied Penny's request to abate the matter pending a decision on the motion to show authority and, for that matter, that each time the district court addressed the third-party defendants' failure to produce the documents, it expressly warned them that their continued failure to comply with the discovery-related orders could result in additional sanctions, including the possibility of having their pleadings struck. The district court also gradually increased the sanctions against them.

Penny also argues that the district court's sanctions were an abuse of discretion because "the discovery sought was basically in the possession of Stephen Hyde." In support of this argument, Penny directs us to certain exhibits submitted by El Patio, LLC in the damages portion of the trial. These exhibits include various El Patio Motel bank statements, cancelled checks, and other financial documents, but also documents that appear to have been generated by El Patio, LLC for litigation—e.g., summary of payments to third-party defendant lawyers; summary of unlawful management fees after termination; summary of excessive management fees; and summary of missing cash. But again, Penny cites to no authority, and we can find none, that would excuse a party from responding to discovery requests and complying with court orders because the other party might already have the documents that are the subject of the discovery requests and orders. Likewise, he cites no authority supporting his implied assertion that a trial court may only impose discovery sanctions where the underlying discovery requests sought information about matters unknown to the requestor. But the lack of authority is not surprising given that the purpose of discovery is to provide parties with notice of the evidence that the opposing party intends to present

17

and to prevent trial by ambush, and not merely to gain new information. *See Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex. App.—Austin 2002, pet. denied).

Nevertheless, to the extent that Penny's argument could be considered a general allegation that the district court's imposition of death-penalty sanctions here was unjust or inappropriate, or somehow failed to meet the supreme court's standards for death-penalty sanctions, we also disagree. The district court allowed the parties to enter into an agreed temporary injunction covering the relevant bank documents. Then, after being presented with several motions regarding the failure to comply with the discovery requests, the district court began issuing orders compelling the discovery by certain deadlines and imposing smaller sanctions after the third-party defendants completely refused to respond to the discovery requests and failed to offer any reasons for that failure. Over time, the district court continued ordering compliance, gradually increasing the sanction amounts, while also warning the third-party defendants about the consequences of their continued failure. Finally, the district court, when it determined that nothing else would work, struck the offending parties' pleadings. *See Cire*, 134 S.W.3d at 842–43; *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882–83 (Tex. 2003); *Transamerican*, 811 S.W.2d at 917.

We are also satisfied that the district court's sanctions do not run afoul of Penny's due-process rights given that the sanctioned conduct—repeated refusal to turn over key documents—justifies a presumption that the party's claims or defenses lack merit. *See TransAmerican*, 811 S.W.2d at 917. According to the record, Penny and the third-party defendants refused to respond to any of the discovery requests, with the exception of one summary document from a computer program, and filed no responses to El Patio, LLC's multiple motions. The principal documents at issue in this discovery—i.e., the bank-account information, bank records, and other

18

financial information for the El Patio Motel—go to the heart of El Patio, LLC's mismanagement claims against Penny and the other third-party defendants. Without all the bank records to trace the motel's funds, especially possibly incriminating ones withheld by the third-party defendants, it seems unlikely that El Patio, LLC would be able to prove the claims asserted in its live petition in intervention, all of which rely in some part on assertions involving transactions with motel funds. For example, El Patio, LLC's conversion and theft-liability claims assert that the third-party defendants "paid themselves excessive and unauthorized management fees and have taken other funds." The third-party defendants' refusal to produce the very documents that would be at the core of the claims asserted against them justifies a presumption that their defenses against those claims lack merit. *See id.* at 918.

In sum, considering the record and the district court's actions leading up to and including striking the third-party defendants' pleadings, we cannot agree the district court's imposition of death-penalty sanctions was an abuse of discretion. We overrule Penny's second issue.

**Exemplary damages**

In his third and final issue, Penny asserts that the district court's award of exemplary damages jointly and severally against Penny and the other third-party defendants was improper under section 41.006 of the Texas Civil Practices and Remedies Code. We agree. By its plain terms, section 41.006 prohibits joint and several liability for exemplary damages by requiring that the award of exemplary damages be specific as to a defendant and that the defendant be liable only for the amount of the award against him: "[I]n any action where there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only

19

for the amount of the award made against that defendant." Tex. Civ. Prac. & Rem. Code § 41.006; *see Carlton Energy Grp., LLC v. Phillips*, 369 S.W.3d 433, 465 (Tex. App.—Houston [1st Dist.] 2012) (rejecting argument that alter ego finding trumps 41.006's plain language), *aff'd in part, rev'd in part*, __S.W.3d__, No. 12–0255, 2015 WL 2148951 (Tex. May 8, 2015) (section 41.006 issue was not raised appealed to supreme court); *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 223–24 (Tex. App.—Dallas 2005, no pet.) ("By its plain terms, section 41.006 provides that there is no joint and several liability for exemplary damages."); *see also, e.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (noting "we ascertain and give effect to the Legislature's intent as expressed by the language of the statute" and "we construe the statute's words according to their plain and common meaning"). Accordingly, it was error for the district court to make Penny jointly and severally liable for these damages.

El Patio, LLC urges us to apply an exception to section 41.006 for closely-related defendants or for interrelated companies with common decision makers. *See Transfer Products, Inc. v. Texpar Energy, Inc.*, 788 S.W.2d 713, 717 (Tex. App.—Corpus Christi 1990, no writ) (affirming joint and several award of exemplary damages against interrelated companies with the same decision makers). In fact, El Patio, LLC suggests that the Houston Court of Appeals considered and approved of such a solution in *Carlton*, and that we should go one step further and adopt it here. But a close reading of *Carlton* reveals that First Court of Appeals was merely offering a "suspenders" argument to support its main holding. *See Carlton*, 369 S.W.3d at 465 ("However, *even if* such a finding *might* in some circumstances permit joint and several liability for exemplary damages, . . . .") (emphases added). Regardless, cases such as *Texpar*, which allowed the exception, were decided before section 41.006 became applicable and, thus, were governed by the common-law rules for exemplary

20

damages.  *Computek*, 156 S.W.3d at 224.  Having been enacted by the Legislature, section 41.006 now controls this issue.  We sustain Penny's third issue.

## Conclusion

Having sustained Penny's third issue, we reverse the district court's joint and several award of exemplary damages and remand the issue of exemplary damages to the district court for its reconsideration.  We affirm the remainder of the judgment.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed in part; Reversed and Remanded in part

Filed:   June 4, 2015