**NEW TALK, INC., Appellant**

v.

**SOUTHWESTERN BELL APPELLEE TELEPHONE COMPANY d/b/a AT&T Texas, Appellee**

**NO. 02-15-00199-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: May 11, 2017

ATTORNEYS FOR APPELLANT: EL-LIOTT S. CAPPUCCIO, LESLIE SARA HYMAN, LANCE H. "LUKE" BESH-ARA, PULMAN, CAPPUCCIO, PUL-LEN, BENSON & JONES, LLP, FORT WORTH, TEXAS.

ATTORNEY FOR APPELLEE: PAUL F. THEISS, AT&T SERVICES, INC., DALLAS, TEXAS.

PANEL: WALKER, GABRIEL, and KERR, JJ.

## OPINION

### ELIZABETH KERR, JUSTICE

In part to ameliorate the monopoly that local telecommunications carriers such as Southwestern Bell Telephone Company—now more recognizable as AT&T Texas—had historically enjoyed and to foster competition, by law they must now allow local competitors to use their infrastructure. Those competitors, of which New Talk, Inc., is one, must of course pay for the piggybacked services. This dispute arose because New Talk believed that AT&T Texas was overcharging it by not giving certain credits under their agreement; over a period of time, then, New Talk engaged in what was essentially self-help by unilaterally reducing what it paid AT&T Texas. Dissatisfied that the trial

court sided with AT&T Texas by concluding that an earlier Public Utility Commission arbitration in AT&T Texas's favor precluded New Talk from getting a do-over, New Talk is now before this court.

In five issues, New Talk appeals from the summary judgment entered in favor of AT&T Texas. We affirm.

## I. Background

AT&T Texas (which we will shorten to simply AT&T) is an incumbent local-exchange carrier (ILEC) under the Federal Telecommunications Act of 1996. *See* 47 U.S.C.A. § 251(h) (West 2014). The Act requires ILECs to provide "interconnection with the [ILEC's] network" for "the facilities and equipment of any requesting telecommunications carrier." *Id.* § 251(c)(2); *see Sw. Bell Tel. Co. v. Fitch*, 801 F.Supp.2d 555, 559 (S.D. Tex. 2011). This is accomplished through "interconnection agreements" with competitive local-exchange carriers (CLECs) like New Talk. *See* 47 U.S.C.A. §§ 251–52 (West 2014); *see also Fitch*, 801 F.Supp.2d at 559. All interconnection agreements must be approved by the appropriate state commission, which, in this case, is the Public Utility Commission of Texas (PUC). *See* 47 U.S.C.A. § 252(e)(1).

In August 2008, AT&T and New Talk entered into an interconnection agreement [1] under which New Talk agreed to pay AT&T for the wholesale resale telecommunication services it provided to New Talk. The agreement became effective when the PUC approved it in September 2008.

The interconnection agreement provided that in the event of any dispute related to

---

1. The interconnection agreement was originally between AT&T and New Talk's predecessor, Connect Paging, Inc. d/b/a Get a Phone. Connect Paging changed its name in 2010, and the parties amended the interconnection agreement to reflect the name change.

it, including "billing disputes," either party could "invoke dispute resolution procedures available pursuant to the dispute resolution rules ... of the [PUC]." A billing dispute did eventually arise between the parties, and in June 2010, New Talk filed a complaint with the PUC alleging that AT&T had threatened to discontinue service to New Talk and seeking injunctive relief to prevent AT&T from doing so. New Talk alleged that AT&T owed New Talk roughly $2.8 million in promotional credits under the interconnection agreement. New Talk also claimed that AT&T wrongfully assessed roughly $300,000 in late charges and inappropriately required a $260,000 security deposit. In addition to injunctive relief, New Talk also requested that the PUC enter an order directing AT&T to credit the promotional credits and late charges to New Talk's account and to return New Talk's security deposit. PUC arbitrators entered an order prohibiting AT&T from discontinuing or suspending service to New Talk.

In August 2010, New Talk and AT&T agreed to stay the PUC proceeding, and the proceeding was stayed for over a year, until November 2011. After the stay was lifted, AT&T counterclaimed based on New Talk's failure to pay for the wholesale resale services that AT&T had provided under the interconnection agreement from May 2009 through March 2012. In response, New Talk admitted that it was not paying the full amounts of AT&T's invoices but asserted that the interconnection agreement allowed it to withhold disputed amounts.

Over the next year, the parties conducted discovery. AT&T and New Talk each moved for a summary decision regarding AT&T's methodology for calculating the promotional credits that New Talk claimed. The arbitrators determined that AT&T's methodology was correct and

granted AT&T's motion. In August 2012, the arbitrators then held a two-day evidentiary hearing on the parties' claims.

Roughly a year later, the arbitrators entered a 42-page arbitration award finding that New Talk "unlawfully withheld payments for wholesale resale services provisioned and billed by AT&T in violation of the parties' [interconnection agreement]." Concerning the amounts AT&T claimed New Talk owed for unpaid wholesale services from May 2009 through March 2012, the arbitrators further found:

Based on review of AT&T's evidence in support of its claim for $12,678,536.90 and New Talk's evidence in support of its disputed claim amounts, the Arbitrators grant AT&T the past due amount of $12,255,887.25 before credits for late payment charges for disputed amounts resolved in New Talk's favor are applied to New Talk's bills.

The arbitrators also required AT&T to issue credits for the late-payment charges after the arbitration award was issued. According to AT&T, the late-payment charges were $31,698.72, which reduced New Talk's past-due balance to $12,224,188.53. New Talk did not move for reconsideration or for rehearing and did not, as it could have, seek judicial review of the arbitrators' decision.

New Talk did not pay the arbitration-determined amounts due to AT&T. In October 2013, AT&T sued New Talk, asserting claims for breach of contract and unjust enrichment based on New Talk's failure to pay for wholesale resale services provided under the interconnection agreement. AT&T also asserted an attorney's-fees claim. New Talk generally denied AT&T's claims and asserted several affirmative defenses, including limitations, offset, credit, and recoupment.

New Talk counterclaimed for breach of contract, and AT&T moved to dismiss the

counterclaim. At the hearing on the motion, the trial court deferred its ruling, suggested that AT&T move for summary judgment on its claims for affirmative relief, and stayed discovery for 60 days to allow AT&T time to file, and the trial court to hear, such a motion. The trial court further concluded that no discovery was necessary because AT&T would be moving for summary judgment on the legal effect of the PUC arbitration award, not on any factual issues.

AT&T moved for summary judgment in late July 2014. In mid-August 2014, New Talk moved to continue the summary-judgment hearing, arguing that it needed to conduct discovery so that it could respond to the motion. The trial court granted a continuance, but it denied New Talk's request to conduct discovery because AT&T's summary-judgment motion was based on legal, not factual, issues.

In September 2014, AT&T amended its summary-judgment motion, arguing that it was entitled to summary judgment as a matter of law on its breach-of-contract claim and on each of New Talk's affirmative defenses because the arbitration award had res-judicata and collateral-estoppel effects. New Talk responded that the award had no preclusive effect and that AT&T's claims were barred by limitations. In its response, New Talk also again objected to the trial court's considering AT&T's summary-judgment motion without allowing New Talk the opportunity to conduct discovery and asked the trial court to continue the summary-judgment response deadline and hearing so that it could do so. New Talk also filed a motion to show authority, asserting that AT&T's attorney did not have authority to represent AT&T because she was employed by

AT&T Services, Inc., not by AT&T. *See* Tex. R. Civ. P. 12.

In October 2014, the trial court heard New Talk's motion to show authority and AT&T's amended summary-judgment motion. The court orally denied New Talk's motion to show authority and indicated that New Talk's request for a continuance to conduct discovery was also denied.

In December 2014, the trial court granted AT&T summary judgment on its breach-of-contract claim and awarded AT&T $12,224,188.53 in damages. AT&T abandoned its claims for unjust enrichment and for attorney's fees. *See* Tex. R. Civ. P. 165. On AT&T's motion, the trial court severed AT&T's breach-of-contract claim, making its order on AT&T's summary-judgment motion final and appealable.

## II. Motion to Show Authority

■ We address New Talk's fourth and fifth issues first because they challenge AT&T's trial counsel's authority to file and maintain a suit on AT&T's behalf. In its fourth issue, New Talk argues that the trial court erred by denying its motion to show authority. *See* Tex. R. Civ. P. 12. In its fifth issue, New Talk asserts that because AT&T's trial counsel lacked authority, the trial court consequently erred by considering and granting AT&T's summary-judgment motion.

New Talk asserted in the trial court and continues to assert on appeal that because AT&T's trial counsel was employed by a different AT&T entity—AT&T Services, Inc.—she did not have the legal authority to represent AT&T. We will review the trial court's denial of New Talk's motion de novo. *See Penny v. El Patio, LLC*, 466 S.W.3d 914, 918 (Tex. App.—Austin 2015, pet. denied).[2]

---

**2.** The *Penny* court recognized that some courts of appeals apply an abuse-of-discretion

Rule 12 permits a party to file a motion challenging an attorney's authority to prosecute or defend a lawsuit. Tex. R. Civ. P. 12. The challenged attorney bears the burden to "show sufficient authority to prosecute or defend the suit on behalf of the other party." *Id.* If the challenged attorney fails to show authority to act, the trial court must "strike the pleadings if no person who is authorized to prosecute or defend appears." *Id.* Rule 12's primary purpose is to enforce a party's right to know who authorized the suit. *See, e.g., R.H. v. Smith*, 339 S.W.3d 756, 762 (Tex. App.—Dallas 2011, no pet.).

In response to New Talk's motion, AT&T filed an affidavit in which one of its corporate officers averred that "AT&T Services, Inc. is a shared services company that provides legal services, among other services, for the AT&T Inc. family of companies, including [AT&T]" and that AT&T authorized its trial counsel to represent it in the lawsuit. New Talk does not dispute that AT&T authorized its trial counsel to represent it but asserts that AT&T's counsel was not legally permitted to do so because she was employed by AT&T Services, Inc. (an AT&T affiliate) and because "Texas law generally prohibits the corporate practice of law, except an employee-attorney is permitted to represent his employer."

Though ethical and conflict-of-interest issues might arise, an attorney employed by one company is not prohibited from representing an affiliate. And whether AT&T Services, Inc. might be engaging in the unauthorized practice of law is irrelevant to determining whether one of its employees had the authority to represent AT&T. New Talk cites *Unauthorized Practice of Law Committee v. American*

*Home Assurance Co.*, 261 S.W.3d 24 (Tex. 2008), but that case did not involve rule 12. Rather, it addressed whether a liability insurer that uses staff attorneys to defend a claim against its insured is engaging in the unauthorized practice of law and, if it is not, whether the staff attorney's affiliation with the insurer must be disclosed to the insured. *Id.* at 26–27, 32. Thus, *American Home* sheds no light on whether AT&T's trial counsel had the authority to represent it.

We therefore overrule New Talk's fourth issue, and because New Talk's fifth issue is premised on its success under its fourth issue, we overrule it as well.

## III. Summary Judgment

In its first two issues, New Talk argues that the trial court erred by granting summary judgment for AT&T because (1) AT&T failed to independently establish the elements of its breach-of-contract claim because the PUC's arbitration award has no preclusive effect, and (2) New Talk conclusively established—or at least presented some evidence of—each element of its limitations defense.

### Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.

standard. 466 S.W.3d at 918 n.2 (discussing cases). We need not decide which standard of review is proper because even applying the

more stringent de novo standard, we will—as explained below—overrule New Talk's fourth and fifth issues.

*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary barrjudgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

When the movant has established the absence of any genuine issue of material fact as to its own cause of action, the nonmovant cannot defeat the granting of a motion for summary judgment by merely pleading an affirmative defense. *Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 264 (Tex. App.—Dallas 2014, pet. denied); *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 924 (Tex. App.—Houston [1st Dist.] 1993, no writ). Instead, the nonmovant "must come forward with evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Holmes*, 449 S.W.3d at 264 (quoting *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). Thus, once the movant produces evidence entitling it to summary judgment on its own cause of action, the burden shifts to the nonmovant to raise a fact issue on its affirmative defense. *Brownlee*, 665 S.W.2d at 112; *Tarrant Restoration v. TX Arlington Oaks Apartments, Ltd.*, 225 S.W.3d 721, 730 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.).

When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any theory presented to the trial court and preserved for appellate review is meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### The Arbitration Award's Effect

New Talk argues in its first issue that the arbitration award is not entitled to either collateral-estoppel or res-judicata effect. Collateral estoppel and res judicata are related concepts concerning the preclusive effect of final judgments. *See Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Collateral estoppel, or issue preclusion, precludes the relitigation of issues resolved in a prior suit. *Id.* Res judicata, or claim preclusion, bars the relitigation of claims that have been finally adjudicated or arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Because it is dispositive of this issue, we discuss res judicata first.[3]

For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) the same parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt*, 919 S.W.2d at 652. The policies behind this doctrine "reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 629 (citing Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata*, 28 Sw. L.J. 355, 358–59 (1974)). The doctrine

---

**3.** We recognize that res judicata is usually used as a shield rather than a sword. But New Talk does not dispute that res judicata can be used offensively, and at least one Texas court has stated that res judicata can be used in that way. *See Koval v. Henry Kirkland Contractors, Inc.*, No. 01-06-00067-CV, 2008 WL 458295, at *4–6 (Tex. App.—Houston [1st Dist.] Feb. 15, 2008, no pet.) (mem. op.) (affirming summary judgment based on offensive res judicata).

can also apply to the relitigation of claims previously determined by an administrative agency. *See, e.g., Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86–87 (Tex. 2008) ("We have, however, held that to further the public policy discouraging prolonged and piecemeal litigation, the administrative orders of certain administrative agencies bar the same claims being relitigated in the court system."); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (collecting cases).

New Talk does not dispute that AT&T satisfied the second and third res-judicata elements. But it maintains that res judicata does not apply in this case because (1) the PUC did not have jurisdiction to award money damages for breach of contract, (2) AT&T did not obtain a binding arbitration award or a final judgment from the PUC, (3) Texas courts have traditionally limited the application of res judicata when it comes to administrative-agency decisions, and (4) applying res judicata in this case violates New Talk's constitutional right to a jury trial. We address each of these arguments in turn.

▆▆▆ First, New Talk asserts that the PUC lacked jurisdiction over AT&T's claims because it has no constitutional or statutory authority to award damages for common-law claims based on the interconnection agreement. *See In re Cano Petroleum, Inc.*, 277 S.W.3d 470, 474 (Tex. App.—Amarillo 2009, orig. proceeding) ("[W]e can find no express grant of authority to the [PUC] to award damages for common law causes of action nor have we been cited to any."). Thus, in New Talk's view, res judicata does not apply. *See Igal*, 250 S.W.3d at 82 ("Res judicata does not apply when the initial tribunal lacks subject matter jurisdiction over the claim."). AT&T recognized in its summary-judgment reply that the PUC cannot award

money damages; otherwise, AT&T would not have had to sue New Talk. AT&T maintains that the PUC did not in fact award money damages but rather resolved the billing dispute between the parties by interpreting the interconnection agreement and calculating the amount New Talk owes AT&T.

▆▆▆ After the PUC approves an interconnection agreement, it retains authority to interpret and enforce that agreement when disputes arise about its meaning or effect. *See In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 479–80 (5th Cir. 2000) ("[T]he Act's grant to the state commissions of plenary authority to approve or disapprove these interconnection agreements necessarily carries with it the authority to interpret and enforce the provisions of agreements that state commissions have approved.")). And it is the PUC that has primary jurisdiction over the validity and enforceability of interconnection agreements between CLECs and ILECs. *See Sw. Bell Tel.*, 226 S.W.3d at 403–04. "The PUC is staffed with experts who routinely consider the validity and enforceability of interconnection agreements," and state commissions like the PUC "have been said to act as 'deputized federal regulators' under the [Act] and have developed expertise in enforcing and interpreting the requirements of the [Act]." *Id.* (quoting *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 344 (7th Cir. 2000)).

The PUC has dispute-resolution procedures that are intended to resolve disagreements over interpreting and enforcing an interconnection agreement's terms and conditions. *See* 16 Tex. Admin. Code § 21.121(1), (3) (2004) (Pub. Util. Comm'n

of Tex., Purpose).[4] *See generally id.* §§ 21.121–.129 (2004) (Pub. Util. Comm'n of Tex., Post-Interconnection Agreement Dispute Resolution). These dispute-resolution procedures broadly authorize the arbitrator to calculate any amount due under the interconnection agreement:

> The presiding officer[5] shall also have the authority to award remedies or relief deemed necessary by the presiding officer to resolve a dispute subject to the procedures established in this subchapter. The authority to award remedies or relief includes, but is not limited to, the award of prejudgment interest, specific performance of any obligation created in or found by the presiding officer to be intended under the interconnection agreement subject to the dispute, issuance of an injunction, or imposition of sanctions for abuse or frustration of the dispute resolution process subject to this subchapter and Subchapter D of this chapter (relating to Dispute Resolution), except that the presiding officer does not have authority to award punitive or consequential damages.

*Id.* § 21.125(h). The interconnection agreement between AT&T and New Talk provided that either party could invoke the PUC's dispute-resolution procedures to resolve billing disputes. First New Talk

and then AT&T invoked these procedures. *See id.* §§ 21.125–.129. They conducted discovery as these procedures permit. *See id.* § 21.125(i). And consistent with these procedures and with the PUC's ongoing authority to interpret and enforce the interconnection agreement, the PUC arbitrators conducted a two-day evidentiary hearing on New Talk's claims and AT&T's counterclaims. *See id.* § 21.125(g). After the hearing, the arbitrators issued an award, determining, in part, that AT&T's counterclaim against New Talk was not really a cause of action for money damages and that New Talk owed AT&T $12,255,887.25 in unpaid wholesale services from May 2009 through March 2012 before credits for late-payment charges were applied.[6] *See id.* § 21.125(k). Because the PUC retained authority to interpret and enforce the interconnection agreement, we conclude that the PUC had concomitant jurisdiction to calculate the amounts due under the interconnection agreement.[7]

 As part of this subissue, New Talk also contends that AT&T is judicially estopped from arguing that res judicata applies to the PUC order because AT&T has successfully argued in other PUC proceedings that the PUC lacks jurisdiction to adjudicate claims resulting in a money-

---

4. "This subchapter establishes procedures for commission resolution of disputed issues arising under or pertaining to interconnection agreements approved by the commission pursuant to its authority under the Federal Telecommunications Act of 1996 (FTA)." 16 Tex. Admin. Code § 21.121.

5. An arbitrator is a "presiding officer." *Id.* § 21.3(7), (29) (2004) (Pub. Util. Comm'n of Tex., Definitions).

6. New Talk does not challenge the amount of the late-payment credit AT&T applied to the $12,255,887.25 in unpaid, wholesale services or whether AT&T's summary-judgment evidence supported that amount.

7. New Talk primarily relies on four cases to support its contention that the PUC lacked jurisdiction over AT&T's claims, but none address the PUC's jurisdiction over the interpretation or enforcement of interconnection agreements. *See Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Penny v. Sw. Bell Tel. Co.*, 906 F.2d 183 (5th Cir. 1990); *Cano Petroleum, Inc.*, 277 S.W.3d at 471–74; *Sw. Bell Tel. Co. v. Reeves*, 578 S.W.2d 795 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Thus, we do not find them to be controlling or persuasive in resolving this issue.

damages award. Judicial estoppel requires, among other things, a sworn, prior inconsistent statement made in an earlier judicial proceeding. *Brotherson v. Springbrook Apartments, Ltd.*, No. 2-10-003-CV, 2010 WL 3834482, at *4 (Tex. App.—Fort Worth Sept. 30, 2010, no pet.) (mem. op.) (citing *DeWoody v. Rippley*, 951 S.W.2d 935, 944 (Tex. App.—Fort Worth 1997, writ dism'd by agr.)). New Talk points to two other PUC decisions—which it attached to its summary-judgment response—as evidence of AT&T's prior inconsistent positions. But even if AT&T urged in those two proceedings that the PUC lacks jurisdiction to award money damages, that position is not inconsistent with its position here—that the PUC could interpret the interconnection agreement and calculate the amounts due. AT&T is thus not judicially estopped from arguing that res judicata applies here.

New Talk next argues that because the PUC arbitration award was not final or binding, it could not have res-judicata effect.[8] AT&T disagrees.

When an administrative agency acts in a judicial capacity and resolves disputed fact issues properly before it in which the parties have had an adequate opportunity to litigate, res judicata bars subsequent lawsuits involving those same facts. *See Igal*, 250 S.W.3d at 86–87 (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). In this case, the PUC, acting in a judicial capacity, resolved disputed fact issues properly before it, and AT&T and New Talk had an adequate opportunity to—and did—litigate before the PUC. *See id.* We therefore conclude that the PUC arbitration award in this case was entitled to res-judicata effect. *See In re UTEX Commc'ns Corp.*, 457 B.R. 549, 560–62 (Bankr. W.D. Tex. 2011) (concluding that PUC arbitration award finding CLEC owed $3.77 million to ILEC in post-interconnection billing dispute was entitled to res-judicata effect under Texas law in part because "the PUC's award is a final judgment on the merits by an administrative agency of competent jurisdiction"); *see also Igal*, 250 S.W.3d at 87 (holding that res judicata generally applies to Texas Workforce Commission final orders because TWC acts in judicial capacity in deciding wage claims and because parties had "an adequate opportunity to litigate their claims through an adversarial process in which TWC finally decided disputed issues of fact"); *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n of Tex.*, 798 S.W.2d 560, 561, 565 (Tex. 1990) (concluding that res judicata barred PUC's later review of its final order purporting to defer issue of expenses' prudence for future resolution because utility had not met burden of proof in earlier proceeding to show that expenses were prudently incurred and because no statute authorized the PUC to defer and reconsider issue), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).

Next, New Talk contends that "[t]he res judicata effect of agency decisions has his-

---

8. New Talk asserts that AT&T's counsel admitted on the record during two earlier hearings that the PUC order was not final and binding. To the extent New Talk is implying that these statements are judicial admissions, they are not because they are not assertions of fact, but legal conclusions. *See, e.g., In re R.M.R., III*, No. 05-14-01247-CV, 2016 WL 1321141, at *4 (Tex. App.—Dallas Apr. 5, 2016, no pet.) (mem. op.) (stating that a legal conclusion "is not a proper subject for a judicial admission"); *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 900 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or defense currently asserted.").

torically been limited in Texas, which tradition still continues, including with respect to decisions of the PUC." As AT&T notes, New Talk supports this contention with dicta from the supreme court's decision in *Coalition of Cities for Affordable Utility Rates*:

> By narrowly applying *res judicata* to historical investment facts in a ratemaking proceeding under the conditions set forth herein, today's opinion continues this tradition of the restricted use of *res judicata* in administrative proceedings. Contrary to the suggestion of the dissent, the Court is in no way "impart[ing] collateral estoppel and res judicata effect on all actions and *inactions* by administrative agencies."

798 S.W.2d at 563 n.5 (quoting Gonzalez, J., dissenting). New Talk asserts that because AT&T failed to argue or to establish that the traditional limitations on the res-judicata effect of administrative-agency decisions did not apply in this case, and because this case does not involve historical investment facts in a ratemaking proceeding like *Coalition of Cities for Affordable Utility Rates* did, AT&T was not entitled to summary judgment based on res judicata. But as we held above, the PUC order was in fact entitled to res-judicata effect, and dicta from *Coalition of Cities for Affordable Utility Rates* and the factual differences between that case and this one do not change this holding.

 Finally, New Talk asserts that applying res judicata to the PUC order violates its constitutional right to a jury trial because a jury—not the PUC arbitrators—should have decided the relevant fact issues. New Talk contends that "[i]n deciding whether the application of res judicata to an agency decision violates the constitutional right to a jury, the resolution turns on the type of subsequent review available against the PUC's decision."

In support of this contention, New Talk relies on *McManus-Wyatt Produce Co. v. Texas Department of Agriculture Produce Recovery Fund Board*, 140 S.W.3d 826 (Tex. App.—Austin 2004, pet. denied).

In *McManus-Wyatt Produce*, the Department of Agriculture Produce Recovery Fund Board—under an administrative scheme set out in the agriculture code—ordered a produce buyer to pay damages to a produce seller for breach of contract. *Id.* at 827–28 (citing Tex. Agric. Code Ann. §§ 103.001–.019 (West 1995 & Supp. 2004)). The buyer appealed the Board's decision to district court, arguing that the Board's action violated its state constitutional right to a jury trial. *Id.* at 829 ("[I]f a party is not satisfied with the decision of the Board following the hearing, it can appeal the Board decision to a district court for a substantial-evidence review." (citing Tex. Agric. Code Ann. § 103.006(b); Tex. Gov't Code Ann. §§ 2001.001–.902 (West 2000 & Supp. 2004))). The appellate court noted that the buyer's appeal of the Board's decision to the district court was limited to a substantial-evidence review, as opposed to a trial de novo, and concluded that the administrative scheme deprived the buyer of its right to a jury trial. *Id.* at 832–33.

*McManus-Wyatt Produce* is distinguishable for several reasons. First, unlike the Board in that case, here the PUC did not impose or award damages against New Talk; instead, the arbitrators interpreted the interconnection agreement and calculated the balance due. Second, the application of res judicata to an agency decision was not an issue in that case. And finally, *McManus-Wyatt Produce* was a direct challenge to an agency decision; this case is not. *Cf. State v. Triax*, 966 S.W.2d 123, 126 (Tex. App.—Austin 1998, no pet.) (holding railroad commission's final order that was valid on its face was not subject

to collateral attack in a later enforcement proceeding); *Pub. Util. Comm'n of Tex. v. Allcomm Long Distance, Inc.*, 902 S.W.2d 662, 666 (Tex. App.—Austin 1995, writ denied) ("[A] well-recognized exception to the rule that agency actions are normally immune from collateral attack occurs when an agency acts beyond the scope of its statutorily conferred powers; a suit for declaratory or injunctive relief will lie in such a situation."). Thus, *McManus–Wyatt Produce* is inapposite, and we conclude that applying res judicata to the PUC's order does not violate New Talk's constitutional right to a jury trial.

For the foregoing reasons, we conclude that AT&T established as a matter of law that the PUC award was a prior, final judgment on the merits by a court of competent jurisdiction and that res judicata applies to the PUC award. *See UTEX Commc'ns Corp.*, 457 B.R. at 560–62. AT&T thereby conclusively established the essential elements of its breach-of-contract claim. And because the trial court properly granted summary judgment on AT&T's res judicata ground, we need not address whether the trial court properly granted summary judgment on AT&T's collateral estoppel ground or New Talk's arguments against the applicability of collateral estoppel in this case.[9] *See Provident Life & Accident Ins. Co.*, 128 S.W.3d at 216; *Star–Telegram, Inc.*, 915 S.W.2d at 473; *see also* Tex. R. App. P. 47.1.

### New Talk's Limitations Defense

New Talk's second issue posits that the trial court erred by granting summary judgment for AT&T because New Talk presented conclusive evidence that its limi-

tations defense barred AT&T's recovery, because New Talk presented some evidence in support of each element of its limitations defense, or because AT&T presented no evidence to negate that defense. New Talk argues that AT&T's claims are time-barred by the interconnection agreement's terms, which provide that "no claims will be brought for disputes arising from this Agreement more than 12 months from the date the occurrence which gives rise to the dispute is discovered or reasonably should have been discovered with the exercise of due care and attention." According to New Talk, AT&T failed to timely bring its claims before the PUC and before the trial court in this suit.

In November 2011, AT&T filed its counterclaim in the PUC proceeding based on New Talk's failure to pay for the wholesale resale services AT&T provided under the interconnection agreement since May 2009. New Talk contends that even if the PUC had jurisdiction to award money damages, the interconnection agreement's terms barred any claims for unpaid services arising more than a year earlier, that is, before November 2010. This defense could have been raised in the PUC proceeding, but New Talk admitted during oral argument, and the record reflects, that New Talk failed to do so. This defense is therefore barred because res judicata also bars defenses that arise out of the same subject matter and that could have been litigated in the first suit. *See Barr*, 837 S.W.2d at 630 (concluding that res judicata bars both matters actually litigated and causes of actions and *defenses* that

---

9. With respect to collateral estoppel, New Talk argued that it does not apply here for the same reasons that res judicata does not apply. New Talk also made the following arguments exclusive to collateral estoppel: collateral estoppel applies only to issues necessarily determined, AT&T failed to support the discretion-

ary use of issue preclusion, a party's failure to meet its burden of proof does not mean the issue was resolved, and an order cannot have preclusive effect if the burden of proof in the initial proceeding is not the same as in the subsequent proceeding.

arise out of the same subject matter and could have been litigated in the first suit); *Am. Int'l Indus., Inc. v. Scott*, 355 S.W.3d 155, 161 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that affirmative defense of release was barred by res judicata because it could have been raised in the prior litigation).

■ New Talk also contends that the interconnection agreement's terms bar AT&T's breach-of-contract claim in this suit because AT&T did not file suit until October 2013, making "AT&T ... late in asserting its claim for even the latest occurrence by nearly a year." But AT&T "brought" its claims in the PUC and filed this lawsuit only to get an enforceable judgment for the amounts the PUC calculated New Talk owed AT&T. And, as explained above, New Talk cannot now assert its limitations defense in this suit because it failed to do so in the PUC.

Thus, New Talk failed to raise a fact issue on, much less conclusively prove, each element of its limitations defense, a defense that AT&T was not required to negate. The trial court therefore did not err by granting AT&T summary judgment on its breach-of-contract claim for this reason as well.

We overrule New Talk's first and second issues.

## IV. Discovery

■ In its third issue, New Talk argues that the trial court erred by freezing discovery while AT&T prepared and filed its summary-judgment motion. New Talk complains that the discovery freeze prejudiced its ability to respond to the motion because AT&T relied on evidence rather than purely legal arguments in its motion and because the freeze prevented New Talk from authenticating the evidence attached to its response.

■ We review a trial court's order freezing discovery for an abuse of discretion. *Helfand v. Coane*, 12 S.W.3d 152, 155 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (citing *K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 379 (Tex. App.—San Antonio 1997, writ denied)). A trial court's freezing of discovery is generally an error. *Id.* (citing *K.C. Roofing*, 940 S.W.2d at 379). But even assuming the trial court abused its discretion by freezing discovery, New Talk cannot show that this error was harmful. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) ("If the trial court abuses its discretion in a discovery ruling, the complaining party must still show harm on appeal to obtain reversal."); *K.C. Roofing*, 940 S.W.2d at 379 (holding trial court erred by freezing discovery but that such error was harmless); *see also* Tex. R. App. P. 44.1(a).

First, New Talk complains that it was unable to respond to AT&T's motion because AT&T went beyond legal argument in its motion by attaching, and relying on, over 100 pages of evidence [10] and by requesting that the trial court take judicial notice of numerous other publicly available documents on file with the PUC. AT&T used these documents to establish the factual and procedural history of this case in the PUC, a history that New Talk does not dispute. AT&T's summary-judgment grounds in this case—the PUC order's preclusive effect, if any—is a question of law. *See, e.g.*, *Cadle Co. v. Davis*, No. 04-09-00763-CV, 2010 WL 5545389, at *4 (Tex. App.—San Antonio Dec. 29, 2010,

---

**10.** AT&T attached excerpts from the interconnection agreement, the PUC's approval of that agreement, the interconnection-agreement amendment reflecting New Talk's name change, New Talk's PUC complaint, the PUC's award, and the PUC's notice to the parties that no commissioner voted to add the award to an open-meeting agenda.

pet. denied) (mem. op.) ("The applicability of collateral estoppel to a particular judgment is a question of law."); *Ex parte Myers*, 68 S.W.3d 229, 231–32 (Tex. App.—Texarkana 2002, no pet.) (recognizing that the question of whether res judicata applies is often a mixed question of law and fact but can be a legal question when there are no factual disputes and only legal determinations are involved). Discovery would have had minimal utility, if any, in helping New Talk respond to this issue, and New Talk does not explain how the discovery freeze prevented it from doing so.

Second, New Talk complains that the discovery freeze prevented it from authenticating the evidence attached to its summary-judgment response, specifically evidence relevant to its offset, credit, and recoupment affirmative defenses. But even though AT&T objected to New Talk's summary-judgment evidence on various grounds, including authentication, the trial court never ruled on those objections. Because the trial court did not sustain AT&T's objections and thereby exclude New Talk's evidence, New Talk's inability to authenticate its evidence was of no effect, and New Talk suffered no harm.

Because the trial court's error, if any, in freezing discovery was harmless, we overrule this issue.

## V. Conclusion

Having overruled each of New Talk's five issues, we affirm the trial court's summary judgment in favor of AT&T.