In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00154-CV**
_____

**MARIA REVA WEST PRADO, Appellant**

**V.**

**MARIA DE LOURDES AYALA LEAL, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-12-13925-CV**

**MEMORANDUM OPINION**

In two issues on appeal, appellant María Reva West Prado ("West Prado")

complains that the trial court erred by denying her Rule 12 motion to show authority

and her motion to stay. For the reasons explained herein, the trial court's judgment

is affirmed in part, vacated in part, and remanded.

Background

Banorte-Ixe Securities International, Ltd. ("Banorte"), a broker-dealer

registered with the U.S. Securities and Exchange Commission and a member of The

1

Financial Industry Regulatory Authority, Inc., filed a petition in interpleader against West Prado and María de Lourdes Ayala Leal ("Leal"), who are both individuals residing in Mexico. The interpleader concerns a dispute over a Banorte account jointly owned by Augustina Prado Díaz ("Augustina") and West Prado, Augustina's niece, which is a multiple-party account with right of survivorship and transfer on death ("TOD") designations, and the TOD beneficiaries are Jose Luis Prado Díaz ("Prado Díaz"), Luciel West Prado, and West Prado. In 1998, West Prado and Augustina opened a joint brokerage account with Banorte's predecessor (the "Joint Account") in Laredo, Texas, agreeing to submit to personal jurisdiction of the courts of the State of Texas. As of September 2016, the Joint Account held approximately $3,289,000.

In its petition, Banorte stated that in July 2015, it received, through the United States Department of Justice, a letter rogatory seeking documents in connection with an involuntary guardianship proceeding against Augustina in Nuevo León, Mexico, which Leal and Prado Díaz, Augustina's brother, initiated. In February 2016, Banorte received a letter from Prado Díaz and Leal, who claimed to be the court-appointed legal guardians of Augustina, demanding the transfer of $2,900,000 from the Joint Account to a bank in Monterrey, Nuevo León, Mexico. According to Banorte's petition, it was unable to determine whether Prado Díaz and Leal had legal authority to act on Augustina's behalf and to withdraw or transfer funds from the

2

Joint Account, because Prado Díaz and Leal had not sought or obtained an order from a court of competent jurisdiction in Texas concerning the ownership of the Joint Account or their authority to direct transactions in the Joint Account. In February 2016, Banorte froze the funds in the Joint Account and informed Prado Díaz and Leal that it would not transfer funds from the Joint Account without written instructions signed by both account holders or their legal representatives or a court order by a court in the United States.

In March 2016, Banorte received a letter from West Prado's Texas counsel explaining that West Prado was contesting Prado Diaz's guardianship of Augustina and demanding that Banorte not transfer any funds held in the Joint Account. Banorte's petition indicates that West Prado provided Mexican court documents showing that she had commenced an *amparo* proceeding in Mexico to set aside the appointment of Prado Díaz and Leal as Augustina's legal guardians due to a lack of summons. According to the documents Prado West provided, the First District Judge for Civil and Labor Matters in the State of Nuevo León sustained West Prado's *amparo* complaint and Augustina's guardianship was under review.

In September 2016, Banorte received a letter from Kevin Duddlesten of McGuire Woods on behalf of Prado Díaz, asserting that Prado Díaz was Augustina's guardian and instructing Banorte that no transactions should be allowed on the Joint Account without notice and consent by Prado Díaz. According to Banorte's petition,

3

in November 2016, Prado Díaz's counsel from Monterrey, Mexico, sent an email reiterating that Prado Díaz was Augustina's guardian, but counsel also acknowledged that final judgment was pending because West Prado had filed a constitutional relief action challenging Prado Díaz's appointment. The record shows that the First Collegiate Court of Appeals in Civil Matters for the Fourth Circuit of Mexico ("the Mexican Appeals Court") found that West Prado's constitutional relief action had merit and ordered the First Family Court of the Fourth Judicial District of Nuevo Leon ("the Mexican Court") to vacate the judgment finding Augustina incompetent and appointing Prado Diaz as the guardian of her person and estate. The Mexican Court vacated its prior judgment and entered a judgment appointing Leal as guardian of Augustina's person and estate.

Due to the ongoing dispute between West Prado and Prado Díaz regarding the right to control the Joint Account, Banorte filed an interpleader, alleging that it was unable to determine who is entitled to the funds in the Joint Account and offering to deposit the funds into the Court's registry to avoid multiple liability and incidental costs. Banorte requested to be released and discharged from all liability on the Joint Account and to recover reasonable attorney's fees and costs. Banorte deposited $3,627,770.86 from its law firm's IOLTA account into the Court's registry. In June 2017, the trial court discharged Banorte and granted Banorte reasonable and necessary attorney's fees and costs.

4

In June 2018, Leal filed an amended answer to Banorte's petition in interpleader, asserting that the Joint Account is held by Augustina and West Prado as tenants in common and that each of their interests in the Joint Account is based on their relative contributions to the Joint Account. According to Leal, Augustina contributed approximately ninety percent of the funds into the Joint Account and that any claims of control or entitlement to the funds in the Joint Account by West Prado are barred, in whole or in part, by equitable doctrines. As Augustina's guardian, Leal requested that Augustina recover ninety percent of the monies in the Joint Account, which is the value proportionate to the aggregate contributions Augustina made to the Joint Account. Leal also filed a motion to substitute Prado Díaz as Augustina's temporary guardian, because upon review, the Mexican Court determined that Prado Díaz should continue to serve as Augustina's temporary guardian.

In November 2018, West Prado filed a Rule 12 motion to show authority under the Texas Rules of Civil Procedure, arguing that Duddlesten did not have proper authority to represent Augustina's interests. According to West Prado, Duddlesten did not have authority to file an answer on behalf of Augustina or Leal, who was acting in her capacity as supervisor to guardian Prado Díaz. West Prado argued that under Texas law, the Mexican Court has the sole authority to determine the rights of the guardian in a case involving Texas domestic assets, and the Mexican

5

Court had not given Leal the authority to transfer Augustina's funds from the Joint Account. West Prado requested that the court deny Duddlesten permission to represent Leal or require Duddlesten to conform his pleadings to the limited powers the Mexican Court had granted Leal as temporary guardian. In the alternative, West Prado argued that the case should be stayed pending a final ruling by the Mexican Court.

Leal filed a response to West Prado's motion to show authority and argued that as Augustina's appointed temporary guardian, she had full capacity to represent Augustina, including the authority to retain counsel to protect Augustina's interest in the Joint Account. According to Leal, she is Augustina's temporary guardian until the Mexican Appeals Court resolves West Prado's appeal of Prado Díaz's appointment as permanent guardian. Leal argued that the Mexican Court's order gave her the authority to take actions to protect Augustina's interests in the Joint Account, including retaining counsel. Leal further argued that West Prado's Rule 12 motion was untimely because it was filed after the parties announced ready for trial, and was merely an attempt to obtain a continuance in the case, which the trial court had already denied. According to Leal, the local rules provide that all civil nonjury cases should be tried or dismissed within twelve months from the appearance date, and West Prado had ample time to bring the motion during the twenty-three months the case was pending.

In November 2018, West Prado filed a motion to dismiss Leal's intervention for lack of subject-matter jurisdiction because Leal lacks standing, and West Prado filed an alternative motion to abate. West Prado argued, among other issues, that the trial court must grant a stay because a foreign guardianship proceeding had been previously filed that involves the same parties and issues. In December 2018, West Prado filed an amended answer, arguing that Leal's demands that the assets in the Joint Account be liquidated and transferred to Mexico contradict the terms of the Joint Account, and Leal's claims are barred by the equitable doctrines of waiver, estoppel, laches, offset, unclean hands, contractual defenses, fraudulent conduct, and/or negligence in making demands. West Prado requested that the trial court find that she is entitled to independent control of the assets in the Joint Account.

In March 2019, Leal filed a motion for summary judgment requesting that the trial court enter an order granting Augustina the sum of all deposits she made to the Joint Account, including a pro rata share of any interest or dividends in the current balance. In her response, West Prado argued that Leal's motion was not ripe, because the trial court had yet to rule on her pending motions addressing jurisdiction and Leal's authority to act as Augustina's guardian. West Prado requested that the trial court continue the summary judgment hearing until the Mexican Court appoints a permanent guardian with authority to act on Augustina's behalf. Leal filed a reply in support of her motion for summary judgment and argued that the trial court need not

7

rule on West Prado's pending motions to determine the issue of ownership of the funds in the Joint Account. According to Leal, the trial court has quasi in rem jurisdiction to determine ownership of the funds, and the guardianship issue does not impact the trial court's determination concerning ownership.

In May 2019, the trial court conducted a hearing, during which the trial judge stated that the issue of ownership of the funds in the Court's registry is a question of law, and the facts regarding the deposits made into the Joint Account are undisputed. According to the trial court, the ownership issue concerns a debate between Augustina, who is a Mexican guardianship ward, and West Prado. West Prado's counsel argued that he filed the Rule 12 motion to show authority because Leal lacks proper authority to be a guardian over the Joint Account or to request that the funds in the Joint Account be divided. The trial judge indicated that she was not concerned about the guardianship issue because her decision is limited to determining ownership and partitioning the funds in the Joint Account, and it is in the Mexican Court's purview to determine who has the rights to Augustina's portion of the funds and for what use they may be made. The trial judge explained that she would be awarding the funds directly to Augustina and not to any of the guardians, and that the Mexican Court will oversee what happens to the funds.

During the hearing, the trial court heard testimony from Manuel Fletes Stadeler, an attorney from Mexico, who explained the status of the pending Mexican

proceedings. Stadeler testified that the pending *amparo* challenges, among other issues, how Leal has spent money to hire lawyers in the United States. Stadeler testified that depending on how the Mexican Appeals Court rules on the *amparo*, Leal's status could change, and everything could become void. According to Stadeler, if the *amparo* is granted, everything will become void, and the funds from the Joint Account would have to be returned to the United States and to Banorte. The trial judge noted that the funds could not be returned to Banorte, because Banorte is no longer a party to the case.

After considering the parties' arguments and Stadeler's testimony, the trial court granted Leal's motion for summary judgment and ordered that Augustina owned 98.16% of the funds in the Court's Registry and West Prado owned the remaining 1.84% of the funds. In its final judgment, the trial court denied West Prado's motion to dismiss, plea to the jurisdiction, motion to abate, and also denied her Rule 12 motion to show authority as being moot because the funds were being paid directly to Augustina and not her guardians. The trial court ordered Augustina's funds to be sent by check payable to Augustina to her address in Mexico. West Prado appealed.

## Analysis

In issue one, West Prado complains that the trial court erred by denying her Rule 12 motion to show authority and entering a summary judgment. According to

Prado, the case should be stayed because the Mexican guardianship suit, which involves the same parties, was filed first, and the effect of a judgment in the interpleader suit would directly conflict with judgments and orders in the prior guardianship suit. Prado argues that proceeding to judgment before the Mexican Court rules would effectively supplant the prior proceeding; disturb principles of comity, convenience, and orderly procedure; and cause unnecessary cost and waste of judicial resources. According to Leal, the trial court acted within its discretion in denying West Prado's Rule 12 motion as moot because the trial court had jurisdiction to determine ownership of the funds in the Joint Account pursuant to the Texas Estates Code, and because West Prado's argument that a Texas court had not authorized anyone to represent Augustina's interests is irrelevant to the trial court's determination of ownership, which is a question of law.

Rule 12 of the Texas Rules of Civil Procedure permits a party to challenge an attorney's authority to prosecute or defend a lawsuit. Tex. R. Civ. P. 12. A sworn written motion stating that a party believes the suit is being prosecuted or defended without authority, served upon the challenged attorney at least ten days prior to the hearing on the motion, may be heard and determined at any time before the parties announce ready for trial. *Id.* At the hearing on the motion, the challenged attorney has the burden of proof to show sufficient authority to prosecute or defend the suit on behalf of the other party. *Id.* If the challenged attorney fails to show authority to

10

act, the trial court must "strike the pleadings if no person who is authorized to prosecute or defend appears." *Id.* The primary purpose of a Rule 12 motion is to enforce a party's right to know who authorized a suit. *New Talk, Inc. v. Sw. Bell Tel. Co.*, 520 S.W.3d 637, 644 (Tex. App.—Fort Worth 2017, no pet.).

A trial court's ruling on a Rule 12 motion is not a decision on the merits or a determination of ultimate questions of fact. *Tanner v. Black*, 464 S.W.3d 23, 26 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Rather, "[i]t is simply a pretrial determination of an attorney's authority to represent a party." *Id.* We review a trial court's ruling on a Rule 12 motion for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

The record shows that on November 16, 2018, West Prado's counsel filed a Rule 12 motion challenging Duddlesten's authority to represent Augustina's interests in the Joint Account on behalf of Leal, and the motion included the unsworn declaration of West Prado. West Prado's counsel argued that because the Mexican Court supervising Augustina's guardianship had only granted Leal limited powers as Augustina's temporary guardian to preserve the status quo of Augustina's assets, Leal lacked the authority to alter the status of the funds in the Joint Account or to transfer, spend, compromise, or otherwise access those funds except for Augustina's health needs and living expenses.

11

Leal filed a response to the Rule 12 motion, arguing that the motion was untimely and that as Augustina's temporary guardian she had full capacity to represent Augustina without restrictions, including the right to retain counsel to protect Augustina's property. According to Leal, the Mexican Court appointed her as Augustina's temporary guardian to ensure the protection and preservation of Augustina's assets, and the Mexican Court determined that the substituted decision-making authority model would apply, which enables Leal to step into the shoes of Augustina and make decisions that represent Augustina's best interests. Leal stated that after Leal appealed the Mexican Court's decision appointing Prado Díaz as Augustina's permanent guardian, the Mexican Court reappointed her to serve as the decisionmaker for Augustina, and Leal attached orders from the Mexican Court verifying that she was Augustina's temporary guardian. Leal also attached a 2018 Order that the Mexican Court sent to Banorte stating that Leal was responsible for making decisions to protect Augustina's interests. West Prado filed a reply to Leal's response and argued that her Rule 12 motion was timely and that the purpose of the motion was to challenge the purported guardian's lack of authority.

During the hearing, the trial judge noted that the matter concerned a debate between Augustina and West Prado regarding ownership of the Joint Account and had nothing to do with the court-appointed guardians. West Prado's counsel argued that Leal did not have authority to partition the funds in the Joint Account and that

there was not proper counsel to speak on Augustina's behalf, but the trial judge indicated that her decision was limited to determining the ownership of the funds in the court's registry and partitioning those funds to West Prado and Augustina. The trial court stated that Leal was a court-appointed attorney and the Mexican Court's order suggests that Leal has the decision-making authority for Augustina. The trial court noted that Leal did not bring the lawsuit but was sued as a defendant and as a representative party of Augustina when Banorte brought the initial interpleader action, and the sole issue was to determine ownership of the funds in the trial court's registry.

Leal's counsel moved to strike the Rule 12 motion, arguing that it failed to comply with Rule 12's requirement that it be a sworn written motion. According to Leal's counsel, the ownership of the funds in the court's registry is an issue of Texas law. The trial court noted that the account statements from Banorte reflect the deposits that Augustina and West Prado made to the Joint Account and that 98.16% of the account funds belong to Augustina and 1.84% belongs to West Prado. *See* Tex. Estates Code Ann. § 113.102 (stating that "[d]uring the lifetime of all parties to a joint account, the account belongs to the parties in proportion to the net contributions by each party to the sums on deposit unless there is clear and convincing evidence of a different intent"). The trial judge further noted that the dispute concerning the guardianship does not change the ownership of the Joint

13

Account, and that since Banorte initiated the lawsuit and deposited the funds in the court's registry, she had to order the funds out of the court's registry.

The interpleader action brought by Banorte is *quasi in rem*, and because the funds were in Texas and Banorte tendered them into the court's registry, the trial court had jurisdiction over the funds to disperse them upon determining ownership. *See Bryant v. United Shortline Inc. Assur. Services, N.A.*, 972 S.W.2d 26, 29 (Tex. 1998); *see also* Tex. Estates Code Ann. § 113.102. Any decision by the Mexican Appeals Court regarding West Prado's challenge of Prado Díaz's appointment as Augustina's guardian would have no impact on the trial court's judgment determining ownership of the funds in the Joint Account. Additionally, the trial court considered the documents filed with Leal's response to the Rule 12 motion showing that the Mexican Court appointed Leal as Augustina's temporary guardian to ensure the protection and preservation of Augustina's assets and that Leal had substituted decision-making authority.

The trial court also heard Stadeler testify that Leal was appointed by the Mexican Court as the curator, which authorized that Leal could spend money on accountants and lawyers, and Stadeler testified that the pending *amparo* challenged that decision. According to Stadeler, if the pending *amparo* is granted, and the Mexican Court decided that Leal cannot spend money on the Texas attorney, then Leal would have "to take out the money and they will not have any authority [in

14

Texas]." Stadeler testified that the main issue with the trial court sending the money in the court's registry to Mexico is that if the *amparo* is granted on review, everything would be void and the money would have to be sent back to Banorte.[1]

After considering Stadeler's testimony, the trial judge stated that if the *amparo* was granted, it would be impossible for the trial court to send the money back to Banorte, and the trial judge indicated that once she determines the ownership of the funds, the Mexican Court overseeing the guardianship is in the best position to determine what to do with Augustina's portion of the funds. Based on this record, we conclude that the trial court did not abuse its discretion by denying West Prado's Rule 12 motion to show authority as being moot because the authority of the guardians is not at issue with regard to the trial court's decision concerning ownership of the funds. *See Tanner*, 464 S.W.3d at 26. Additionally, after considering the documents Leal filed with her response to the Rule 12 motion, the trial court could have reasonably found that Leal had satisfied her burden to show that as Augustina's temporary guardian she had sufficient authority to hire counsel

---

[1]We note that in her brief, Leal contends that West Prado's Rule 12 motion is moot because West Prado's *amparo* was not granted, and Leal included documents in the appendix indicating a final judgment was entered and that Prado Díaz's appointment as Augustina's guardian was confirmed. However, we cannot consider the documents in Leal's appendix because they are not part of the appellate record. *See Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also* Tex. R. App. P. 34.1.

to protect and preserve Augustina's interests in the Joint Account. *See* Tex. R. Civ. P. 12. We overrule issue one.

In issue two, West Prado argues that the trial court erred by denying her motion to stay the case pending authorization by the Mexican Court, which has prior jurisdiction over a dispute between the same parties. According to West Prado, the trial court's judgment determining ownership of the funds in the Joint Account would directly conflict with judgments and orders in the guardianship proceeding. Leal argues that West Prado has incorrectly framed this case as a guardianship case rather than as an interpleader with the sole issue of determining ownership. Leal further argues that West Prado's motion to stay is moot. According to Leal, West Prado's counsel admitted that the identity of the guardian does not change the issue of ownership.

West Prado filed a motion to dismiss for lack of jurisdiction and an alternative motion to abate the case. Having already discussed in issue one that the trial court had jurisdiction over the funds and to disperse them upon determining ownership, we will only address West Prado's alternative motion to abate. *See Bryant*, 972 S.W.2d at 29; *see also* Tex. Estates Code Ann. § 113.102. West Prado argued that the trial court should have granted a stay because the previously filed guardianship in Mexico involved the same parties and the effect of a judgment in this suit would directly conflict with judgments and orders in the prior suit. According to West

16

Prado, proceeding to a judgment in the interpleader action would effectively supplant the prior proceeding and disturb principles of comity, convenience, and orderly procedure. West Prado further argued that the trial court should have abated the case because it was not ripe.

We review a trial court's decision on a motion to abate for an abuse of discretion. *See Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981). Abating a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). Texas courts have discretion over whether to abate a case based on comity and defer to the sovereignty of a foreign nation. *Fuentes v. Zaragoza*, 555 S.W.3d 141, 160 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Generally, to obtain a stay of the later action, the petitioner must show that the two suits "involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief." *Griffith v. Griffith*, 341 S.W.3d 43, 54 (Tex. App.—San Antonio 2011, no pet.).

During the hearing, West Prado's counsel argued that the trial court should abate the proceedings until the Mexican Court established a permanent guardian. The trial court determined that it had jurisdiction to determine ownership of the funds in the court's registry, and that the guardianship proceeding in Mexico did not affect her ruling on the interpleader action. Here, the two suits at issue do not involve the

17

same cause of action or seek the same relief. *See id.* A final judgment in the interpleader action does not eliminate the need to proceed with the prior guardianship proceeding in Mexico, and the Mexican Court does not have jurisdiction over the funds in the court's registry and cannot grant relief in the interpleader action. We conclude that the trial court did not abuse its discretion by denying West Prado's motion to abate. *See Dolenz*, 620 S.W.2d at 575; *Fuentes*, 555 S.W.3d at 160. We overrule issue two.

Augustina Prado Diaz died after the submission of the appeal but before our opinion issued. *See* Tex. R. App. P. 7.1(a)(1). The trial court's judgment, which ordered the Clerk of the Court to disburse 98.16% of the funds in the registry of the court directly to Augustina Prado Diaz, cannot be executed in this manner because she is deceased. *See* Tex. R. Civ. P. 150, 151, 152. Having overruled both of West Prado's issues, we vacate the trial court's judgment only as to the disbursement ordered to Augustina Prado Diaz, affirm the remainder of the judgment, including the allocation of ownership interests to the parties, and remand the case to the trial court for a determination of the proper payee for the funds owned by Augustina Prado Diaz at the time of her death. *See* Tex. R. App. P. 43.2(b).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 30, 2020
Opinion Delivered October 22, 2020

Before McKeithen, C.J., Horton and Johnson, JJ.