SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellant,

v.

Ray P. REEVES, Appellee.

No. 17173.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 4, 1979.

Rehearing Denied March 1, 1979.

Susan K. Terrell, Houston, for appellant.

James H. Campbell, Houston, for appellee.

PEDEN, Justice.

Southwestern Bell Telephone Company appeals from a judgment in favor of Ray P. Reeves based on breach of contract and negligence arising from the company's having failed for about a year to intercept calls to his old telephone number and give callers his new office number. He was awarded actual damages of $10,000 and exemplary damages of $50,000. The company asserts that there was no evidence and insufficient evidence to support the jury findings of 1) unreasonableness of the tariff 2) proximate cause 3) gross negligence 4) malice 5) *res ipsa loquitur* 6) negligence and 7) justifiable reliance on appellant's alleged promise to intercept calls. Further, that the award of exemplary damages was excessive and erroneous, that the actual damages were improperly measured, and that since the telephone company's liability is limited by tariff, the trial court lacked jurisdiction over the subject matter. We order the recovery reduced to $10,000.

In response to special issues, the jury found:

1. that the general exchange tariff provision in question was not reasonable and necessary for furnishing services to the company's patrons and for the conduct of its business generally;

2. that from June 1, 1972 to June 1, 1973 the company was negligent in failing to intercept calls to Reeves' office number and to his home number and such negligence was a proximate cause of loss of income to him;

3. (predicated on an affirmative answer to Issue 2) such failure was gross negligence;

4. with respect to both his office and home numbers, the company a) promised Reeves that it would intercept and transfer calls from June 1, 1972 to June 1, 1973; b) Reeves relied on such promises to his detriment; c) Reeves acted reasonably in justifiable reliance on such promises; and d) the detriment he suffered in reliance on them was foreseeable by the company;

5. (predicated on affirmative answers to 4) the company was actuated by malice in not intercepting calls to Reeves;

6. $10,000 would fairly and reasonably compensate Reeves for his loss of profits resulting from the occurrence in question;

7. (predicated on an affirmative answer to 3 or 5) $50,000 should be awarded to Reeves as exemplary damages.

Ray P. Reeves has used the same number for 17 years and has practiced law in Harris County since 1955. Before he planned, on June 1, 1972, to relocate both his office and his home to his new residence, he requested telephone service on his new location. He testified that he was told by a company representative that all calls placed to his old numbers would be intercepted and that an operator would give each caller his new number. He testified that in reliance on this promise he made no other arrangements.

Before June 20, Reeves notified a Mrs. Mouton (with the telephone company) that his calls were not being intercepted. Mrs. Mouton testified that the company's equipment was not working properly but that by June 23, after numerous test calls by the company's employees, the equipment had apparently been repaired. She said that on July 13 Reeves called, said he was the one whose business service she had fixed, that he was having the same problem with his residence phone and it was fixed that same day. According to the company's record, that was the last complaint Reeves made. Reeves testified that in many calls made during the next year, he found that the interceptor worked only about a day and then quit working. Further, that the company assigned his previous home number to another party.

Mr. Lofton testified that Mr. Reeves had been his attorney since 1960 and had also handled the legal problems of his employ-

ees, who varied in number from 30 to 150. He said he had tried a number of times in July or August, 1972, to call Reeves at his office and at his home but that no one answered the office phone, and finally, the home phone number was reassigned. He gave up on trying to reach Reeves. There is testimony to the effect that in October the referral system was still not working properly. Reeves testified that during the time in question, his law practice suffered as clients were unable to call him easily.

▮ In Point of Error 1, appellant says the district court lacked jurisdiction over this action for breach of contract and negligence.

Prior to the enactment of the Public Utilities Regulatory Act (PURA) local governments regulated Texas utility systems. Art. 1446c Vernon's Texas Civil Statutes (1975).

PURA was enacted in 1975 ". . . to protect the public interest inherent in the rates and services of public utilities." Appellant is a public utility as defined by Art. 1, Section 3(c)(2)(a) of the Act. Under Section 18 of the Act, telecommunications utilities are

> Subject to the limitations imposed in this Act, and for the purpose of regulating rates, operations and services so that such rates may be just, fair, and reasonable, and the services adequate and efficient, the commission shall have exclusive original jurisdiction over the business and property of all telecommunications utilities in this state.

The company maintains that Section 18 confers exclusive original jurisdiction over all controversies regardless of the nature of the suit. It cites *Bell Telephone Co. v. City of Kountze,* 543 S.W.2d 871 (Tex.Civ.App. 1976, no writ) (closing of a telephone business office); *Commissioners' Court of Harris County v. Peoples National Utility Co.,* 545 S.W.2d 47 (Tex.Civ.App.1976, no writ) (injunction to restrain private water utility from discontinuing water service); *General Telephone Co. of the Southwest v. City of Perryton,* 552 S.W.2d 888 (Tex.Civ.App. 1977, writ ref. n. r. e.) (rate increase) and

*General Telephone Co. of the Southwest v. City of Point Comfort,* 553 S.W.2d 808 (Tex. Civ.App.1977, no writ) (rate increase). Each case was dismissed for lack of jurisdiction, but none of them involved a tort or contract action.

Prior to PURA the cities were the only regulatory agencies under existing law. J. Hopper, "A Legislative History of the Texas Public Utilities Act of 1975," 26 Baylor L.Rev. 775 (1976). With the enactment of PURA, local governments were stripped of regulatory power. "It is readily apparent that the Legislature has made a comprehensive statute applicable to the entire field of legislative regulation of public utilities replacing the earlier antiquated and greatly criticized pattern of regulation theretofore in effect. In essence, the Act repealed the law giving jurisdiction to the district court, and since it contained no savings clause, it takes away the right to proceed in a pending case undetermined at the time when it becomes effective." *Southwestern Bell Telephone Co. v. City of Kountze, supra* at 874.

While the Legislature has conferred exclusive original jurisdiction upon the Public Utilities Commission over the business and property of all telecommunications utilities in this state for the purpose of *regulating* "rates, operations, and services", we hold that jurisdiction over this tort claim against a telephone company has not been thus removed from the courts.

"Where the claim is not for future compliance but for damages based on past acts, the exhaustion of administrative remedies doctrine may not apply. The notion is based on the absence of a statute authorizing the Public Utility Commission to fix or adjudicate claims for damages." Kens, *Public Futility—The Status of Consumers in Light of the Public Utility Regulatory Act,* 28 Baylor Law Review 953 (1976).

▮ Points of Error 2 through 7 concern the limiting of the company's liability by the tariff. Appellant asserts that since a tariff is law, its reasonableness and the necessity for it are questions for the court, so they should not be submitted to the jury.

Further, that there was no evidence or, alternatively, insufficient evidence to support the jury's finding that the tariff was not reasonable and necessary.

The specific General Exchange Tariff in question in this case states:

Interruptions of Service—The customer assumes all risk for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, failure or defects in equipment and facilities furnished by the Telephone Company occurring in the course of furnishing service, in the telephone service or other communication services furnished him by the Telephone company, or of the Telephone Company failing to maintain proper standards of maintenance and operations and to exercise reasonable supervision, except as follows: If service is interrupted other than by negligence or willful act of the customer an allowance at the rate for that portion of the customer's service affected by the interruption shall be made for the time such interruption continues after the fact is reported by the customer or after detected by the Telephone Company and the interruption is for more than 24 hours. No other liability shall in any case attach to the Company in consideration of such interruptions.

The company has the right to establish reasonable rules and regulations for furnishing service to patrons and for the conduct of its business. Ordinarily regulations so made will be presumed to be reasonable and necessary, unless the contrary is shown. The contracts of such a company must be construed in the light of its obligations to the public and the duty it owes to its patrons generally. *Kelly v. Southwestern Bell Telephone Co.,* 248 S.W. 658 (Tex.Com.App.1923, judgm. adopted). There is little law in Texas on the determination of whether a tariff is reasonable. In *Alcazar v. Southwestern Bell Telephone Co.,* 353 S.W.2d 933 (Tex. Civ.App.1962, no writ), the tariff was admitted in evidence after the parties had stipulated that it would be admitted subject to the question of its reasonableness being submitted to the jury.

■ In the case at bar, there was evidence that Reeves lost clients and that the company failed to give him relief for a year. He proved with sufficient specificity the amount of actual damages he sustained. We consider that the reasonableness of the tariff was raised by proof 1) that damages caused may be large as compared to the minute recovery allowed by the tariff and 2) that the company may allow the problem to persist for a long time even though it can ordinarily solve it quickly.

■ In Point of Error 8, the company maintains that the trial court erred in submitting Special Issue No. 2 to the jury because the company has no duty to provide Reeves faultless telephone service. It contends that the plaintiff's claim was based on the premise that the company has a duty to provide each of its customers with perfect, faultless service, and in the event the service fails, to insure each customer against any loss sustained. The company's position is that as a public common carrier of telecommunication services, its duty is to make available, so far as possible, to all the people of the United States a rapid, efficient, nation-wide, and world-wide wires and radio communications service with adequate facilities at reasonable charges, citing the Federal Communications Act of 1934, 47 U.S.C.A. 151. We hold that the company had a duty not to damage Reeves by negligently failing to carry out its agreement to intercept his calls and refer them to his new numbers.

■ In its ninth point, the company contends that because Special Issue No. 2 failed to require the jury to find its answer "from a preponderance of the evidence" the trial court erred in submitting the issue.

"A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." Rule 274, Texas Rules of Civil Procedure. The company did not object to the omission in the issue or in an instruction, so the complaint is deemed waived.

■ In Points of Error 10 and 11, the company says that there was no evidence

and insufficient evidence that its failure to intercept calls was a proximate cause of any loss to Reeves. To support this contention, the company relies on *Southwestern Telegraph & Telephone Co. v. Gotcher,* 93 Tex. 114, 53 S.W. 686 (1899) a case involving the telephone company's failure to deliver an important message. In that case, since the company did not have actual notice of the natural consequences of its failure to deliver a specific written message, it was not held liable.

In the case at bar, there was evidence that Reeves had told the company that the interception system was failing to refer calls and that he was losing clients as the result of it, so the company had actual notice of the consequences of the failure to intercept. Further,

> It has been pointed out repeatedly that for the defendant's negligence to be regarded as a proximate cause of the plaintiff's injury, it is not necessary that the exact nature of the injury or the precise manner of its infliction should reasonably have been foreseen. It is sufficient that the defendant should reasonably have anticipated consequences or an injury of the general nature of that which ensued. *Port Terminal Railroad Association v. Ross,* 155 Tex. 447, 289 S.W.2d 220 (1956). See also *Otis Elevator v. Wood,* 436 S.W.2d 324, 329 (Tex.1968); *Texaco, Inc. v. Pursley,* 527 S.W.2d 236, 239 (Tex.Civ. App.1975, no writ); *McEachern v. Glenview Hospital, Inc.,* 505 S.W.2d 386, 381 (Tex.Civ.App.1974, no writ); *Santa Rosa Medical Center v. Robinson,* 560 S.W.2d 751, 757 (Tex.Civ.App.1977, no writ).

The evidence presented in our case was sufficient to support the jury's affirmative answer to the proximate cause issue.

The company next asserts that there is no evidence or insufficient evidence to award exemplary damages. We sustain those points. Under Texas law, only the acts of a vice principal or an agent whose acts have been ratified or expressly authorized can subject a corporate defendant to exemplary damages for gross negligence. *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934). The same rule applies to exemplary damages based on malice. The four categories of vice principals are: (1) corporate officers, (2) those who have the authority to employ, direct and discharge servants of the masters, (3) those engaged in the performance of nondelegable or absolute duties of the master, and (4) those to whom the master has confided the management of the whole or a department or a division of his business. *Ft. Worth Elevators Co. v. Russell, supra* at 406. Other cases employ this shorthand definition of a vice principal: One who, in addition to his authority to direct and supervise the work of subordinates, has the authority to hire and discharge them. *Sartain v. Southern National Life Insurance Co.,* 364 S.W.2d 245 (Tex.Civ.App.1963, writ ref. n. r. e.); · *Waring v. Harris,* 221 S.W.2d 345 (Tex.Civ.App.1949, writ ref.); *Lantry-Sharpe Contracting Co. v. McCracken,* 105 Tex. 407, 150 S.W. 1156 (1912).

Reeves did not identify any company employee whose conduct should give rise to recovery of exemplary damages. A Mrs. Mouton was the only company employee he named besides "a man named Fred Perring, or something like that." Reeves made no complaint about Mrs. Mouton; he said she was "doing everything she could to fix it." He didn't make any specific complaint about Fred Perring either. It was some unnamed person at the company that he said told him he was making a nuisance of himself and indicated that if he kept calling, the interceptor would not be made to work.

Further, Mrs. Mouton was not shown to be a vice principal or alter ego of the company. She is a "union manager" of the business office. She described her duties:

> That entails having supervisors that report to you, that you have service representatives that report to them, who I am managing for the business of records that takes complaint orders, requests about bills, and moving of service and things of that nature.

\* \* \* \* \* \*

I had four supervisors reporting to me and approximately four service representatives.

Reeves asserts that even if Mrs. Mouton is not deemed a vice principal, she is an agent of the appellant and her actions as well as the actions of the other employees have been ratified by the appellant, and contends that the company's continual denial of negligence amounts to ratification of its employees' acts. Mere denial of liability does not constitute ratification, and we find no evidence of ratification.

■ Appellant's Points of Error 22 and 23 are that there was no evidence and, alternatively, insufficient evidence to sustain the jury's affirmative answer to Special Issue No. 2, which inquired whether the company was negligent in failing to intercept calls to Reeves. There was evidence that the company's failure to intercept his calls could have been caused by (a) the calling party's dialing the wrong number, (b) the telephone number not being put on intercept (computer programmed incorrectly) or (c) something wrong with the gears in the interceptor, the trunk, the allotter, or the various equipment.

One of the preliminary instructions in the court's charge was:

You are instructed that you may infer negligence by a party but are not compelled to do so, if you find that the character of the accident is such that it would ordinarily not happen in the absence of negligence and if you find that the instrumentality causing the accident was under the management and control of the party at the time the negligence, if any, causing the accident probably occurred.

This instruction was approved in *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245 (Tex. 1974).

We first determine whether the evidence and the inferences which may be drawn from it show that the accident (failure to intercept) ordinarily would not have happened in the absence of negligence.

Next, was the instrumentality causing the injury under the management and control of the company? It asserts that Reeves was unable to pin-point the exact instrumentality causing the failure. In *Birmingham v. Gulf Oil Co.,* 516 S.W.2d 914 (Tex. 1974), the physical circumstances surrounding a crane accident made it impossible to prove the precise mechanism of the metal failure and the time at which stage in that process occurred, but the court held that the plaintiff was entitled to recover because the law "only demands the best proof of a transaction that it is susceptible of, and when that is produced then it become a question whether or not its probative force is such to establish its existence."

In the case at bar, Reeves appears to have presented the best available evidence as to the cause of the failure. He cannot show which of the company's devices is responsible; even the company's expert is unsure. When the company's interception devices failed to work between June 20 and June 23, 1972, the fault was found to lie in the company's equipment, and the jury was entitled to conclude that it was again malfunctioning. The evidence to explain the occurrence was more readily accessible to the defendant than the plaintiff.

The company also relies on the "human function" testimony of Mr. Freeman as proof that an instrumentality was not causing the problem. This testimony is susceptible to a number of interpretations, one being that the human factor was in fact the negligence of the company, and it appears the jury interpreted it in that way.

The company also maintains that the necessary equipment is exposed to the actions of the community at large and is therefore not within its exclusive control. It appears from the evidence that the company has physical control over the entire system and should be charged with the general duties of inspection and upkeep. Since its equipment, and especially that involved in the failure to intercept, is not ordinarily accessible to others, the jury could reasonably have inferred that the negligence is attributable to the company. See *Collins v. Gulf Bldg. Corp.,* 83 S.W.2d 1093 (Tex.Civ.App. 1935, error ref.); *Leonard Bros v. Newton,*

71 S.W.2d 613 (Tex.Civ.App.1934, error dism'd).

■ In its 27th point the company contends that the jury was allowed to consider an improper measure of damages. Special Issue No. 6 asked:

> What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence, would fairly and reasonably compensate Plaintiff, Ray Reeves, for his loss of profits, if any, resulting from the occurrence in question? Answer in dollars & cents. We the Jury answer: $10,000.00

The proof offered consists of Mr. Lofton's testimony that during the year in question, when he couldn't get in touch with Reeves, he paid attorney's fees in excess of $10,000 to one firm and less than $15,000 to other attorneys and of Reeves' testimony that he lost employment by Lofton's 30 to 150 employees, an average of a client a week, for a weekly loss of $150 to $300, or about $5,000 for the year. Lofton testified that he later paid about $25,000 to other attorneys he had hired when he thought Reeves was no longer available.

Appellant asserts that the $10,000 damage finding represents the gross income of the attorneys other than Reeves whom Lofton paid, so Reeves failed to demonstrate his lost profits. The company also contends that Reeves must show what his charges for the services rendered by the other attorneys would have been and what part of that charge would have been his profit.

> " * * * Where there is proof, within the permissible range of certainty, that a right of a plaintiff has been invaded, he should not be denied a substantial recovery because of the difficulty in accurately measuring his damages. * * * The rule is that if an injured plaintiff has produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the exact amount of the damage is incapable of ascertainment." *Hindman v. Texas Lime Co.,* 305 S.W.2d 947, 953 (Tex. 1957).

We hold that the evidence supports an award of $10,000 for loss of profit. We note that Reeves' wife was the secretary and that his office was in his home.

■ In Points of Error 24 through 26, the company alleged that there was no evidence or insufficient evidence to support the jury's findings that (a) the company promised to intercept Reeves' calls, (b) that he relied on this promise, (c) that his reliance was reasonable, and (d) that the detriment he suffered was foreseeable by the company. These four questions were answered affirmatively for both Reeves' office and home numbers.

There was evidence that the company's policy is to intercept business calls until the new Yellow Pages Directory is published (in this case, one year) and to intercept residential calls for ninety days unless the number is needed or the customer requests otherwise. Reeves testified that he was also promised interception of calls to his home phone for a year. It was proven that he told the company he was losing clients. There was evidence that months later the calls were not being referred, although the problem had earlier been temporarily worked out.

The appellant asserts that it would be an injustice to reward Reeves for "his allegedly continuous and blind reliance for one entire year that the appellant would refer his calls . . ." This argument fails to take cognizance of the fact that Reeves was limited by the trial judge to showing his losses from one client, Mr. Lofton, and any clients Mr. Lofton might have sent to him. Mr. Lofton testified that he attempted to get in touch with Reeves during July or August and, being unable to do so, finally secured other attorneys. Reeves need not rely on the company's promise to intercept for a year in order to show that he suffered damages. If the phone referral system had been working perfectly in September, Reeves would have missed Mr. Lofton's calls. The jury's answer to Special Issue No. 4 were supported by the evidence.

As to the plaintiff's recovery of $50,000 in exemplary damages plus interest thereon, the judgment of the trial court is reversed and rendered in favor of the defendant; as to recovery of $10,000 plus interest thereon, the judgment is affirmed.