# IN THE SUPREME COURT OF TEXAS

════════════

No. 19-0662

════════════

In re Oncor Electric Delivery Company LLC, Relator

═══════════════════════════════════════════

On Petition for Writ of Mandamus

═══════════════════════════════════════════

**Argued October 8, 2020**

JUSTICE BLAND delivered the opinion of the Court, in which JUSTICE LEHRMANN, JUSTICE DEVINE, JUSTICE BUSBY, and JUSTICE HUDDLE joined.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE BOYD and JUSTICE BLACKLOCK joined.

The State regulates public utilities through its right to promote the general health, safety, and welfare of the public.[1] Its regulation acts as a counterweight to public-utility monopolies, ensuring that they charge fair rates and adequately provide vital services.[2] In contrast, the "fundamental purposes of our tort system are to deter wrongful conduct, shift losses to responsible parties, and fairly compensate deserving victims."[3] Regulation is the government's prospective ordering of marketplace conduct; tort lawsuits are retroactive case-by-case correctives.

The question presented in this mandamus action is whether an electric utility may compel a plaintiff who alleges a common law personal injury claim to appear before the Public Utility

---

[1] *Tex. Power & Light Co. v. City of Garland*, 431 S.W.2d 511, 517 (Tex. 1968).

[2] *See* TEX. UTIL. CODE § 31.001.

[3] *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex. 2003).

Commission before appearing in court. We conclude it may not unless the claim complains about the utility's rates or its provision of electrical service. The Public Utility Regulatory Act grants the Commission exclusive jurisdiction to regulate a utility's rates, operations, and services.[4] The Commission's jurisdiction extends to customer–utility disputes regarding Commission-regulated activity. This personal injury claim against a utility allegedly arising under duties at common law and consumer-protection statutes, however, is not a regulatory action within the Commission's auspices.

The plaintiff in this case alleges well-settled elements of a negligence claim: a duty of care, breach of that duty, causation, and damages. His allegations do not rely on a utility acting in its regulated capacity, nor on a disruption of or failure to provide electrical service. Negligence alleged in a context merely coincidental to utility activities does not create Commission jurisdiction.[5]

The Commission's regulations, like many state regulations, may inform liability and defenses under the common law. Utility regulations have done so for decades. Nothing in the Act suggests, however, that the Legislature moved the adjudication of personal injury cases that do not arise from the failure to provide electrical service before the Commission, absent any issue within the Commission's jurisdiction that it may remedy. The last forty-five years under the Act indicate otherwise. Accordingly, we deny relief.

---

[4] TEX. UTIL. CODE § 32.001(a).

[5] *In re Tex.-N.M. Power*, __ S.W.3d __ (Tex. 2021) (orig. proceeding).

# I

Relator Oncor Electric Delivery Company provides electrical service to a house owned in part by Stacey Taylor in Graham, Texas. Oncor provides service to the house next door via a drop line that crosses Taylor's property. Concerned that trees obstructing the drop line posed a hazard, Taylor requested that Oncor trim the trees or move its line.[6] Taylor claims Oncor responded that the trees were Taylor's responsibility. Taylor ultimately undertook to trim the trees himself using a boom lift. While trimming them, Taylor alleges that he contacted an overhead high-voltage line and sustained electric shock injuries.

Taylor sued Oncor for negligence and consumer-protection violations, among other claims. Oncor moved for summary judgment, contending that it has no liability to Taylor because he violated Health and Safety Code Chapter 752, which requires those who work near high-voltage power lines to arrange to de-energize the lines before beginning work. While Oncor's summary-judgment motion was pending, it filed a jurisdictional plea, asking the trial court to abate the case to require Taylor "to exhaust his administrative remedies" before the Commission. The trial court denied Oncor's plea. The court of appeals denied Oncor's petition for writ of mandamus, and Oncor sought relief in this Court.

---

[6] Contrary to the assertion in the dissent, Taylor does not allege that the trees interfered with his electrical service, only that the neighbors complained of service disruptions. *Post* at 3–4. In the two instances where Taylor's petition asserts that the Taylors and the neighbors *both* "were suffering serious problems," the petition does not specify *problems with electrical service*. Instead, the general statement about "serious problems" is followed by a reference to the danger posed by falling and breaking branches "causing serious issues to the neighbor's service line." We cannot infer from the petition that Taylor experienced electrical service interruptions.

According to Oncor, the Public Utility Commission must decide whether Oncor had a duty to trim the trees or relocate the drop line, because such a decision involves Oncor's operations and services. Taylor responds that common law tort claims for personal injury damages fall outside the Commission's exclusive jurisdiction. He observes that the Act's purpose does not extend so far, and the long-standing exercise of jurisdiction over these claims by Texas courts in the decades since the Act became law confirms that limitation.

**II**

We grant mandamus relief to correct a trial court's abuse of discretion when an appeal from a final judgment is an inadequate remedy.[7] In particular, we have granted mandamus relief to halt trial court proceedings that run counter to an administrative agency's exclusive jurisdiction.[8] Thus, we must decide in this case whether the trial court had jurisdiction to proceed with Taylor's suit or instead should have abated the case to allow the Commission to exercise its jurisdiction in the first instance.

A district court has subject-matter jurisdiction to resolve disputes unless the Legislature divests it of that jurisdiction.[9] Because we presume that a district court has subject-matter jurisdiction, the burden to demonstrate that exclusive jurisdiction rests with an administrative

---

[7] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

[8] *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 621, 627 (Tex. 2007) (orig. proceeding).

[9] *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (orig. proceeding) (citing TEX. CONST. art. V, § 8); *see Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam) ("The Texas Constitution expressly allows the Legislature to bestow exclusive original jurisdiction on administrative bodies.").

4

agency falls on the party resisting the district court's jurisdiction.[10] Agencies do not share the jurisdictional presumption of district courts;[11] they exercise only powers conferred in clear and express statutory language.[12]

Interpretation of the Public Utility Regulatory Act's grant of jurisdiction begins, as it must, with the plain meaning of the enacted text considered in light of the statute as a whole.[13] The Legislature has granted the Commission "the general power to regulate and supervise the business of each public utility."[14] Regarding electric utilities specifically, the Legislature has declared that its purpose "is to establish a comprehensive and adequate *regulatory system* for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities."[15] To achieve this purpose, the Commission has "exclusive original jurisdiction over the rates, operations, and services of an electric utility" in some geographic areas and "exclusive appellate jurisdiction" in others—namely, where municipalities exercise "exclusive original jurisdiction over the rates, operations, and services of an electric utility in areas in the municipality."[16]

---

[10] *See Entergy Corp.*, 142 S.W.3d at 322 (observing that we do not presume such jurisdiction, as agencies "may exercise only those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislature has expressly placed with the agency").

[11] *Id.*

[12] *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

[13] *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019).

[14] TEX. UTIL. CODE § 14.001.

[15] *Id.* § 31.001(a) (emphasis added).

[16] *Id.* §§ 32.001, 33.001(a).

The parties gloss over the division of jurisdiction between cities and the Commission. Oncor states that "the PUC has the ultimate authority over electric-utility rates, operations, and services and this Brief, for simplicity, will refer only to the PUC's exclusive jurisdiction." Taylor observes that the original 1975 version of the Act refers to the "'governing body of each municipality,' for reasons that are not relevant to the legal issues in this proceeding."

Contrary to the parties' assertions, the exclusive-jurisdiction connection between the Commission and cities reveals its limited scope. As enacted in 1975, the Act's jurisdictional grant makes plain that the Commission's "exclusive original jurisdiction" has the same regulatory purpose, with the same limits, as the jurisdiction granted to cities. The distinction between the two is merely geographic:

> Sec. 17 (a) Subject to the limitations imposed in this Act, *and for the purpose of regulating rates and services* so that such rates may be fair, just, and reasonable, and the services adequate and efficient, the governing body of each municipality shall have exclusive original jurisdiction over all electric, water, and sewer utility rates, operations, and services provided by an electric, water, and sewer utility *within its city or town limits*.
>
> (b) At any time after two years have passed from the date this Act becomes effective, a municipality may elect to have the commission exercise exclusive original jurisdiction over electric, water, or sewer utility rates, operations, and services within the incorporated limits of the municipality.
>
>         . . . .
>
> (d) The commission shall have exclusive appellate jurisdiction to review orders or ordinances of such municipalities as provided in this Act.
>
> (e) The commission shall have exclusive original jurisdiction over electric, water, and sewer utility rates, operations, and services *not within the incorporated limits of a municipality exercising exclusive*

6

> *original jurisdiction over those rates, operations, and services as provided in this Act.*[17]

Reading Section 17 as enacted, the Legislature's design is clear. Municipalities have original jurisdiction to regulate utilities within their territories and can surrender this authority to the Commission if they choose. The Commission, in contrast, has original jurisdiction in unincorporated areas. Each grant of jurisdiction is similarly limited, however, by the objective the Legislature ascribes to the Act at the beginning: "*for the purpose of regulating rates and services* so that such rates may be fair, just, and reasonable, and the services adequate and efficient."[18]

The putatively non-substantive 1997 codification of the Act sundered and reordered Section 17 into stand-alone sections 32.001 and 33.001 of the Utility Code.[19] Nonetheless, the Legislature's original guiding purpose for granting jurisdiction lives on in section 33.001(a), which grants exclusive jurisdiction to municipalities "[t]o provide fair, just, and reasonable rates and adequate and efficient services," limiting language now absent from its counterpart in section 32.001(a). By shearing the section granting jurisdiction to the Commission from the section granting it to municipalities, and by somewhat diluting the limitation "for the *purpose of regulating rates and services*," the codifier—not the Legislature—is responsible for the misleadingly broad language in section 32.001(a).

---

[17] Public Utility Regulatory Act, 64th Leg., R.S., ch. 721, sec. 17, 1975 Tex. Gen. Laws 2327, 2334–35 (codified at TEX. REV. CIV. STAT. art. 1446c, § 17) (emphases added).

[18] *Id.* at sec. 17(a) (emphasis added).

[19] *See* 1 TEXAS LEGISLATIVE COUNCIL, UTILITIES CODE, REVISOR'S REPORT 118–19, 128–29 (1997) (dividing section 2.101 of article 1446c-0 into separate sections of the Utilities Code); *see also id.* at ii ("This is a *nonsubstantive* revision. The staff's authority does not include improving the substance of law. The sole purpose of this project was to compile all the relevant law, arrange it in a logical fashion, and rewrite it without altering its meaning or legal effect.").

Statutory interpretation relies on the context and framework of an entire statute, not just on the definitions of words in isolation.[20] That framework is no less instructive after it inadvertently has been dismantled. "Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes."[21]

As the Act expressly states, the Commission's purpose is regulatory. The Act's purposive statement that the Commission is a regulatory body provides an outer limit to the Commission's exclusive jurisdiction. This limit equally informs the Commission's jurisdiction to adjudicate disputes between "affected persons" and utilities, as granted in section 15.051 of the Utilities Code:

> An affected person may complain to the regulatory authority in writing setting forth an act or omission by a public utility in violation or claimed violation of a law that the regulatory authority has jurisdiction to administer or of an order, ordinance, or rule of the regulatory authority.[22]

As relevant here, the Code defines "affected persons" as persons "whose utility service or rates are affected by a proceeding before a regulatory authority."[23] The Commission's jurisdiction to administer laws is only as extensive as its jurisdiction to regulate—that is, it is limited to the charging of rates and provision of electricity. The Commission does not have "jurisdiction to administer" any law if it does not implicate ratemaking or the provision of electricity.

---

[20] *E.g.*, *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019).

[21] *Id.* (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 539 (1947)).

[22] TEX. UTIL. CODE § 15.051(a).

[23] *Id.* § 11.003(1)(B).

## III

Limiting the Commission's jurisdiction to adjudications that implicate regulatory matters comports with the common law, our precedent, and the Commission's assessment of its jurisdiction.

The right to bring a claim that seeks redress for a physical injury traces back to the origin of the common law.[24] It is not a regulatory cause of action dependent upon Commission enforcement. Our Texas Constitution enshrines this common law right in the open courts provision: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."[25] The Legislature thus must not abrogate a common law right "unless the reason for its action outweighs the litigants' constitutional right of redress."[26] As we explained in *Oncor Electric Delivery Co. v. Chaparral Energy*, the Texas Constitution also protects the right to have a jury resolve fact questions in actions analogous to those tried by jury in 1876.[27] We will not presume that the Legislature abrogated this right absent the Legislature's clear repudiation of the common law.[28]

---

[24] *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 115 (Tex. 2011) (naming an individual's right to be free from physical harm as "a hallmark of our common law").

[25] TEX. CONST. art. I, § 13.

[26] *Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 143 (Tex. 2018) (quoting *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994)).

[27] *Id.* at 144.

[28] *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010) ("[A]brogation of common-law claims is disfavored. However, we will construe the enactment of a statutory cause of action as abrogating a common-law claim if there exists 'a clear repugnance' between the two causes of action." (quoting *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000))).

The Legislature's grant of jurisdiction to the Commission over the regulation of rates, operations, and services suits the Legislature's expressly identified purposes. Exclusive regulatory jurisdiction promotes uniformity, checks the utilities' monopoly power, and harnesses the Commission's "unique expertise."[29] Jurisdiction over *every* dispute involving a utility does not serve the same ends. Though a utility's exercise of its monopoly power becomes all-important in the context of setting rates or requiring adequate service, it is decidedly less so in the context of a personal injury claim that does not arise from that service. The question in such cases is not whether the customer–utility relationship is fair or just, but whether a utility's negligence has caused physical harm in a particular instance.

The Legislature's decision to *regulate* an issue is not coextensive with a wholesale disruption of the adjudication of private disputes touching on that issue. While regulations may inform liability under the common law,[30] they do not inherently create private rights of action or adjudicatory forums.[31] We will not impart such authority in the absence of the Legislature's clear instruction.[32]

---

[29] *Chaparral*, 546 S.W.3d at 142.

[30] Compare, for example, *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612, 622 (Tex. 2015), in which we observed that the Texas State Board of Pharmacy's regulation of compounding preparations informs the duty of care owed by a pharmacy to its patients, with *U-Haul International v. Waldrip*, 380 S.W.3d 118, 139 (Tex. 2012), in which we observed that the "mere existence of federal regulations does not establish the standard of care or establish gross negligence per se."

[31] *E.g.*, *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) ("[T]here is no presumption that administrative agencies are authorized to resolve disputes.").

[32] That "jury awards can have an effect akin to regulation," *post* at 2 (quoting *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246, 249 (Tex. 1994)), is not a reason to presume that the Legislature intended for the Commission to pass judgment on common law duties in common law cases. Regulation-by-jury is not avoided even in the dissent's formulation—it is merely delayed. *Post* at 10 (endorsing the hybrid claims-resolution process).

The Commission's regulatory expertise thus does not extend to every possible interaction between a utility and the public. We recognize this limitation in the cases we decide today, but our recognition of the Act's jurisdictional limits is not new. In the forty-five years since its enactment, our precedent and that of the lower courts considering tort claims against utilities align with the Act's limited grant of jurisdiction for regulatory purposes. As early as 1979, a utility attempting to redirect a deceptive trade practices claim to the Commission was simply informed "[w]e have neither been shown, nor can we find any statute ousting courts of jurisdiction."[33] We acknowledged the Commission's "exclusive jurisdiction to regulate utility rates, operations, and services" in *Southwestern Electric Power Co. v. Grant*, but we did not dismiss or abate that case for lack of jurisdiction.[34] Rather, we exercised our jurisdiction and decided the case by applying a governing tariff.[35]

In *Grant*, the plaintiff sustained an electric shock after her house began receiving fluctuating voltage.[36] The plaintiff alleged that the utility company should have disconnected her service when it learned about the fluctuating voltage, but the company disclaimed liability caused

---

[33] *Sw. Bell Tel. Co. v. Nash*, 586 S.W.2d 647, 650 (Tex. App.—Austin 1979, no writ); *see Sw. Bell Tel. Co. v. Reeves*, 578 S.W.2d 795, 798 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n r.e.) ("While the Legislature has conferred exclusive original jurisdiction upon the Public Utilities Commission over the business and property of all telecommunications utilities in this state for the purpose of Regulating 'rates, operations, and services', we hold that jurisdiction over this tort claim against a telephone company has not been thus removed from the courts."), *disapproved of on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 671 (Tex. 1999). Oncor claims that *Nash*, *Reeves*, and other pre-*Chaparral* cases rejecting exclusive jurisdiction over tort claims are distinguishable because they predate the approval of hybrid claims resolution in *David McDavid Nissan*, 84 S.W.3d 212. *Nash* and *Reeves* focus on the Commission's inability to resolve these claims, however, and the existence of hybrid claims resolution does not expand the limits of the Commission's jurisdiction.

[34] 73 S.W.3d 211, 216 (Tex. 2002).

[35] *Id.* at 219–22.

[36] *Id.* at 214.

11

by the fluctuations, pointing to a regulation adopted from its tariff.[37] We granted the electric company's petition to assess whether such a limitation on liability was reasonable—we did not send the case to the Commission.[38] Likewise, in *DeWitt County Electrical Co-operative, Inc. v. Parks*, we upheld a directed verdict based on an easement's incorporation of the utility's tariff.[39] We did not insist that the parties first seek the Commission's interpretation of the easement agreement. Finally, in *Traxler v. Entergy Gulf States, Inc.*, we interpreted the meaning of "transmission line" in Utilities Code section 181.045 to conclude that the plaintiff could assert a negligence claim based on the utility's failure to comply with height requirements and representations regarding Health and Safety Code Chapter 752; we did not require the plaintiff to first seek tariff-based relief before the Commission.[40]

Oncor counters that our more recent decision in *Chaparral Energy*[41] supports its position that the Commission's exclusive jurisdiction extends to Taylor's claims. The dissent adopts this view. In *Chaparral*, the dispute centered on the utility's failure to timely provide electrical service—that is, the very activity the Commission regulates.[42] The plaintiff directly linked its claim to the utility's regulatory obligation to provide electricity, a claim that only a utility's

---

[37] *Id.*

[38] *Id.* at 215.

[39] 1 S.W.3d 96, 102–03 (Tex. 1999).

[40] 376 S.W.3d 742, 751 (Tex. 2012) (holding that utility's violation of overhead line requirement and representation at construction meeting that employer need not call to de-energize line provided basis for common law negligence claim).

[41] 546 S.W.3d 133 (Tex. 2018).

[42] *Id.* at 136–37. The customer measured its damages in *Chaparral* as the cost of renting and fueling generators to provide electricity to its wells. *Id.* at 137.

customer could bring. In other words, the plaintiff in *Chaparral* sought regulatory enforcement of the utility's tariff through a breach-of-contract suit.[43]

In contrast, Taylor's suit alleging inaction and representations about tree-trimming does not complain about his electrical service or Oncor's rates. Taylor's claim could just as plausibly be brought by a non-customer who contacted a high-voltage power line, like the plaintiff in *Traxler*. While the provision of electricity service (and its timeliness) falls squarely in the regulatory sphere, a duty alleged against an occupier of the premises does not. The customer's damages in *Chaparral* arose because the customer had no power to its wells and had to rent generators—i.e., it did not have electrical service. Unlike the customer in *Chaparral*, Taylor does not allege damages arising from the provision of his electrical service—lights on or off—but from Oncor's alleged representations about, and duty to maintain, the premises that it occupied.

The Health and Safety Code provision on which Oncor relies as a defense is also not linked to its failure to provide electrical service or to a pre-existing customer–utility relationship. Chapter 752's obligation to notify a utility of upcoming work near a high-voltage power line is not tariff-based; the statute imposes this duty on nearly everyone working near a high-voltage line, not solely on a utility's customers.[44] Similarly, Taylor invokes common law and statutory duties that do not

---

[43] *See* TEX. UTIL. CODE § 33.001(a). As we note today in *Texas-New Mexico Power*, limitations of liability in a tariff do not necessarily "transform Plaintiffs' complaint into one about [the utility]'s operations or services as a utility." *In re Tex-N.M. Power Co.*, __ S.W.3d __ (Tex. 2021) (orig. proceeding).

[44] TEX. HEALTH & SAFETY CODE §§ 752.003–.008 (requiring a "person, firm, corporation, or association" working near a high-voltage overhead line to notify the line operator or be liable for any resulting damages); *see Trail v. Friedrich*, 77 S.W.3d 508, 513–14 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that plaintiff who violates Chapter 752 cannot recover from line owner because, under section 752.008, plaintiff must indemnify line owner for plaintiff's own damages); *Chavez v. City of San Antonio ex rel. City Pub. Serv. Bd.*, 21 S.W.3d 435, 439–40 (Tex. App.—San Antonio 2000, pet. denied) (same).

depend on his status as a utility customer.[45] The alleged duty that Taylor has pleaded (to trim trees) arises in contexts apart from the provision of electrical service: as an owner or occupier of land, for example.[46] And, in *Traxler*, we examined allegations like Taylor's, about whether a utility's statements or omissions excused compliance with Chapter 752.[47]

Oncor suggests that Taylor must "exhaust his administrative remedies," but Oncor concedes that none apply to Taylor's claims. Instead, it seeks undefined partial rulings on subsidiary questions of a duty alleged to arise under the common law or the consumer-protection statute.[48] The Commission has no authority to afford the kind of remedy that Taylor seeks: recompense for personal injuries.[49] While the lack of a remedy alone is not dispositive of the jurisdictional question, if the plaintiff's allegations do not invoke an administrative remedy or assert an administrative claim, the suit is less likely to fall within the Commission's "regulatory system."[50]

---

[45] The dissent adds "[found in the tariff]" to describe the alleged duty in this case, but the petition alleges premises liability based on Oncor's duty as an occupier of the land. *Post* at 14 n.71.

[46] *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102–03 (Tex. 1999) (holding that easement gave electric utility right to remove and trim trees and that utility had no common law duty to refrain from tree trimming where easement governed).

[47] *See Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 751–52 (Tex. 2012) (concluding that utility company could be liable as a result of "encourag[ing] criminal noncompliance with Chapter 752").

[48] The Commission has the authority to impose administrative penalties, order disgorgement of excess revenues, and issue cease-and-desist orders against hazardous conduct. TEX. UTIL. CODE §§ 15.023(a), (e), 15.104. Taylor has not pleaded for any of this relief.

[49] *See id.* § 15.023(a) (granting the Commission the authority to impose administrative penalties); *id.* § 15.104 (granting the Commission the authority to issue cease-and-desist orders to persons engaging in hazardous or injurious conduct).

[50] In *Chaparral*, we noted that a claimant must exhaust administrative remedies to obtain the agency's decision on issues that fall within the agency's exclusive jurisdiction before filing suit and that Chaparral sought "additional damages recoverable pursuant to Oncor's Tariff." 546 S.W.3d 133, 142–43 (Tex. 2018). In contrast, Oncor concedes that Taylor does not seek relief that either the Commission or the tariff affords.

14

Consistent with the text and our precedent, the Commission itself disclaims the general authority to make common law determinations or to adjudicate contract claims and torts, even when its orders "might inform a court on aspects of claims within the court's jurisdiction."[51] Because the Commission says it "does not have jurisdiction to adjudicate private tort or contractual disputes between parties," it has correctly refused to address common law questions—such as whether actions constitute negligence.[52] As it recognized after our decision in *Chaparral*, the Commission "is limited to making determinations regarding applicable law, its rules, and the tariff 'as a regulatory matter.'"[53]

Oncor raises the concern that courts will interpret its tariff inconsistently. Any inconsistency that results from courts incorrectly applying a tariff-based defense—a task Texas courts have performed for decades—is remediable through the appellate process.[54] Far less

---

[51] Tex. Pub. Util. Comm'n, Order at 2, *Complaint of Giovanni Homes Corp. Against Oncor Elec. Delivery Co.*, Docket No. 45854 (July 18, 2019), 2019 WL 3642716 ("The Commission does not have jurisdiction to make— and does not make—common-law determinations."); Tex. Pub. Util. Comm'n, Amended Preliminary Order at 12, *Complaint of Vinson Against Oncor Elec. Delivery Co.*, Docket No. 40953 (May 21, 2013) ("The Commission has repeatedly stated that it does not have statutory authority to generally adjudicate contract claims and torts or award damages." (footnotes omitted)); *see* Tex. Pub. Util. Comm'n, Draft Preliminary Order at 6, *Complaint of Chad Swahn Against Shady Oaks Water Supply Co., LLC*, Docket No. 50367 (June 23, 2020), 2020 WL 3499232 ("The Legislature has not conferred on the Commission any general authority to preside over tort actions.").

[52] Tex. Pub. Util. Comm'n, Preliminary Order at 3, *Complaint of Freedom Grp. LLC Against CenterPoint Energy Hous. Elec., LLC*, Docket No. 33052 (Dec. 15, 2006), 2006 WL 3716004 (refusing to adjudicate whether CenterPoint's delay in processing disconnect-for-no-payment orders constituted negligence or breach of contract).

[53] Tex. Pub. Util. Comm'n, Order at 1–3, *Complaint of Giovanni Homes Corp. Against Oncor Elec. Delivery Co.*, Docket No. 45854 (July 18, 2019), 2019 WL 3642716 (quoting *City of Houston v. CenterPoint Energy Hous. Elec. LLC*, No. 01-11-00885-CV, 2012 WL 6644982, at *7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.) (refusing to endorse ALJ's findings of fact and conclusions of law regarding contract formation and breach of contract)).

[54] *See, e.g.*, *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222–23 (Tex. 2002); *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102–03 (Tex. 1999); *see also Sw. Bell Tel. Co. v. Nash*, 586 S.W.2d 647, 649–50 (Tex. App.—Austin 1979, no writ); *Sw. Bell Tel. Co. v. Reeves*, 578 S.W.2d 795, 798 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n r.e.), *disapproved of on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668 (Tex. 1999).

consistent is the notion that agency jurisdiction for personal injury claims turns on whether the injured plaintiff happens to be a utility customer or other "affected person."[55] The Legislature has not commanded this disparate result.

Filling the Commission's docket with personal injury cases not linked to regulatory enforcement would unnecessarily delay their adjudication in an elusive effort to obtain rulings on issues that would not resolve the case or even an element of a particular claim. Such delay is exaggerated for plaintiffs who reside in an area in which a municipality retains its exclusive jurisdiction under section 33.001. Absent legislative directive, we decline to consign those plaintiffs to filing *first* with their municipality, *then* appealing to the Commission, and only then permitting an ordinary personal injury case to proceed in court.

**IV**

Informed by the purposive language that now resides in section 33.001(a), we hold that the Commission's regulatory jurisdiction does not extend to Taylor's claims. Even if Taylor is the kind of "affected person" who may bring a claim to the Commission, he has not brought the kind of claim that the Commission can adjudicate. Taylor's claim alleges premises liability and deceptive trade practices because Oncor was negligent in placing its utility line, failing to trim trees, telling Taylor that the tree-trimming was his responsibility, and failing to warn Taylor of the dangers of tree-trimming. None of Oncor's alleged wrongdoing has to do with its rates or the

---

[55] The Legislature limits the Commission's complaint process to those "whose utility service or rates are affected." TEX. UTIL. CODE § 15.051(a) ("An affected person may complain to the regulatory authority . . . ."); *id.* § 11.003(1) ("'Affected person' means . . . a person whose utility service or rates are affected by a proceeding before a regulatory authority.").

16

adequate and efficient provision of electrical services. Oncor's tariff, as incorporated into regulations that govern a utility's conduct, may inform whether a utility is liable to those who are injured in a utility easement or by contact with a power line, as it did in *Traxler*.[56] It may provide a defense to liability, which the trial court must consider, as we did in *Grant*.[57] Oncor has presented these issues to the trial court in requesting summary judgment, arguing that it has no legal duty to Taylor.[58] A regulatory standard or defense, however, does not drag this tree-trimming suit before the Commission, which concededly has no role in adjudicating a utility's liability for a personal injury claim in these circumstances.

Much as a federal question presented as a defense does not create federal jurisdiction, Oncor's defense that its tariff might limit its liability does not create Commission jurisdiction.[59] Taylor's petition does not refer to Oncor's tariff, nor to any violations of it. He does not complain of unfair rates, nor of Oncor's wholesale failure to timely provide electric service, as in *Chaparral*. On the face of his petition, Taylor does not invoke the Commission's regulatory jurisdiction.

\* \* \*

---

[56] *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 751–52 (Tex. 2012).

[57] *See Grant*, 73 S.W.3d at 222–23 (affirming trial court's grant of summary judgment because utility's tariff limited liability for personal injury).

[58] In determining that the trial court has jurisdiction to adjudicate this dispute, we express no opinion about the merit of Taylor's claims.

[59] *Cf. Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

17

The Legislature does not abrogate the common law in silence.[60] The Public Utility Regulatory Act authorizes the Commission to form a "regulatory system"[61] for utilities and their customers, not to adjudicate individual claims for physical harm that arise from a duty independent of utility regulation. Accordingly, the Commission lacks exclusive jurisdiction to decide Taylor's claim. Because the trial court properly denied Oncor's jurisdictional plea, we deny relief.

_____
Jane N. Bland
Justice

OPINION DELIVERED: June 25, 2021

---

[60] *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015) ("[S]tatutes can modify or abrogate common law rules, but only when that was what the Legislature clearly intended.").

[61] TEX. UTIL. CODE § 31.001(a).